STATE OF CONNECTICUT *v.* JAMES MENZIES
(9239)

DUPONT, C. J., DALY and LANDAU, Js.

Argued October 30, 1991—decision released February 18, 1992

*Ramona S. Carlow,* special public defender, with whom was *Glenn D. Woods,* special public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *John Massameno,* assistant state's attorney, and *James J. Rubin,* law student intern, for the appellee (state).

LANDAU, J. The defendant, James Menzies, appeals from a judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of

General Statutes § 53a-70,[1] sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a child in violation of General Statutes § 53-21. These offenses all involved the defendant's stepdaughter, L. On appeal, the defendant raises the following claims: (1) The refusal of the assistant state's attorney to drop the risk of injury count regarding J, a second alleged victim, constituted prosecutorial misconduct and denied the defendant his constitutional right to due process; (2) the trial court improperly restricted the defendant's right to cross-examine L concerning acts of misconduct indicative of a lack of veracity, in violation of his federal and state constitutional rights of confrontation; (3) the trial court improperly adopted special procedures during L's testimony that heightened sympathy for her and enhanced her credibility; and (4) remarks made by the assistant state's attorney during closing argument violated the defendant's federal and state privileges against compulsory self-incrimination, resulting in an unfair trial. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. During the months of September, 1985, through June, 1986, the defendant lived in East Hartford with L and her mother, to whom he was married, and was visited occasionally by his daughter from a previous marriage, J, on weekends. At this time, L was six years old and J was ten years old. The defendant was responsible for taking care of L in the evenings while her mother worked.

One evening during this time period, the defendant sexually assaulted L. It was not until two years later, however, that L told anyone about this encounter. In October, 1987, the department of children and youth

---

[1] The information failed to indicate a particular subsection of General Statutes § 53a-70 under which the defendant was to be prosecuted.

services (DCYS) learned of this incident. Jennifer Spector, a social worker employed by DCYS, first interviewed the student whom L had told about the incident with the defendant,[2] and then interviewed L. Also present during the interview with L were another DCYS social worker, L's teacher and Sergeant Dennis McQueeney of the East Hartford police department.

During this interview, L recounted more than one sexual encounter with the defendant and gave contradictory reasons for having had such sexual contact.[3] L was direct and straightforward during this interview, with the one exception being when she was asked when the sexual assault with the defendant had taken place. She ultimately responded that it had occurred two years earlier, when she was in the first grade.

Following the interview, Spector, McQueeney and the second DCYS social worker went to the defendant's house to speak with L's mother and the defendant. When confronted with the allegations of abuse, the defendant initially denied having had any such contact with L. Later during the interview, he stated that he could not remember if he had sexually assaulted L two years earlier and asked McQueeney how much time he would get if he pleaded guilty. L was sent to live with her grandparents in Vermont for the remainder of the school year.

Spector again interviewed L upon her return to Connecticut in the fall of 1988. Unlike the first interview, this interview was videotaped. During this interview,

---

[2] The student informed a school social worker about L's allegations. The school social worker, in turn, contacted DCYS.

[3] L claimed that the defendant had threatened her when she was unable to do her homework that she could either "have her butt beaten" or perform oral sex on him. L also claimed that the defendant came into bed with her and pressed his body against hers.

L recounted only one sexual assault by the defendant and appeared more uncomfortable than she had during the prior interview.

Spector also interviewed J.[4] J confirmed that she had been sexually abused by her father, although she was unable to state exactly when the assault had occurred. At trial, however, J denied having been sexually assaulted by her father.

On the basis of this evidence, the trial court granted the defendant's motion for judgment of acquittal on the count of risk of injury to a child involving J. The defendant was convicted by the jury of the remaining counts involving L. The trial court imposed a total effective sentence of fifteen years imprisonment, execution suspended after eight years with five years probation. The defendant has appealed from this judgment.

I

The defendant's first claim is that the refusal of the assistant state's attorney to drop the risk of injury count regarding J constituted prosecutorial misconduct that was so serious as to deny him his constitutional right to due process as guaranteed by the fourteenth amendment to the United States constitution and by article first, § 8, of the Connecticut constitution. We disagree.

The defendant was initially charged with eight counts of violations of the General Statutes. Four counts were predicated on conduct involving L, and the four remaining counts involved his daughter, J. The defendant was initially charged with two counts of sexual assault in the first degree in violation of General Statutes § 53a-70, two counts of sexual assault in the second

---

[4] The student had also told the school social worker about similar allegations J had made against the defendant.

degree in violation of General Statutes § 53a-71 (a) (1), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2) and two counts of risk of injury to a minor in violation of General Statutes § 53-21. Prior to trial, the court dismissed the two counts of sexual assault in the fourth degree due to the running of the statute of limitations and the state entered nolle prosequis as to the two remaining counts of sexual assault involving J, claiming that J was psychologically unable to testify with respect to those charges. The defendant proceeded to trial on the remaining four counts, one of which involved J. After the presentation of the state's case-in-chief, the trial court granted the defendant's motion for judgment of acquittal on the count of risk of injury to a child regarding J.

At trial, J testified that her father had never sexually assaulted her. Defense counsel claimed that the assistant state's attorney knew, prior to calling J to the stand, that she would deny any allegations of sexual contact with her father. The defense also claimed that the state had no other evidence that it reasonably believed to be admissible implicating the defendant in this offense and thus abused its discretion as the prosecuting authority by pursuing the risk of injury count involving J. The assistant state's attorney explained that he entered a nolle prosequi as to the first degree and second degree sexual assault counts involving J because, at that time,[5] she was unable to provide further information that would place the events within the statute of limitations, but that the remaining count clearly fell within the statute of limitations.[6] The trial

[5] The state argued, in opposing the defendant's motion for a dismissal of these two counts, that children who have been victims of sexual abuse go through varying periods where they can and cannot discuss the abuse.

[6] General Statutes § 54-193 (b) provides: "No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d, for which the punishment is or may be imprisonment in

court, noting the difference in the type of sexual conduct alleged in the first and second degree sexual assault counts and the conduct alleged in the risk of injury count, concluded that there would be no prejudice in retaining the risk of injury count pertaining to J.[7]

It has long been recognized by both the United States Supreme Court and our Supreme Court that it is the prosecutor's duty to determine whether reasonable grounds exist to proceed with a criminal charge and that the prosecutor has broad discretion in determining what crime or crimes to charge in any particular situation. *Wayte* v. *United States,* 470 U.S. 598, 607–608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985); *State*

excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense, except a capital felony, a class A felony or a violation of section 53a-54d, except within one year next after the offense has been committed."

General Statutes § 54-193a provides: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense involving sexual abuse, sexual exploitation, or sexual assault of a minor except within two years from the date the victim attains the age of majority or seven years, whichever is less, provided in no event shall such period of time be less than five years after the commission of the offense."

[7] The fifth count read as follows: "Said State's Attorney further accuses James Menzies of the crime of Sexual Assault in the First Degree, in violation of General Statutes § 53a-70; more specifically, James Menzies, by the use of force or threat of force, compelled J. to engage in sexual intercourse (fellatio) at . . . East Hartford, in the morning on an unknown weekend date between June, 1985, and June, 1986."

The sixth count read as follows: "Said State's Attorney further accuses James Menzies of the crime of Sexual Assault in the Second Degree in violation of General Statutes § 53a-71 (a) (1); more specifically, James Menzies engaged in sexual intercourse (fellatio) with J., a person under sixteen years of age, at . . . East Hartford, in the morning of an unknown weekend date between June, 1985, and June, 1986.

The eighth count read as follows: "Said State's Attorney further accuses James Menzies of the crime of Risk of Injury to a Minor, in violation of General Statutes § 53-21; more specifically, James Menzies did an act likely to impair the health or morals of J., a child under the age of sixteen years, by subjecting her to sexual contact at . . . East Hartford, on unknown weekend dates between June, 1985, and October, 1987."

v. *O'Neill,* 200 Conn. 268, 279–80, 511 A.2d 321 (1986); *State* v. *McKenna,* 188 Conn. 671, 680, 453 A.2d 435 (1982); *State* v. *Haskins,* 188 Conn. 432, 473–74, 450 A.2d 828 (1982); *State* v. *Chetcuti,* 173 Conn. 165, 168, 377 A.2d 263 (1977); *State* v. *Villafane,* 171 Conn. 644, 664, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct 1137, 51 L. Ed. 2d 558 (1977); *State* v. *Dills,* 19 Conn. App. 495, 500, 563 A.2d 733 (1989). The criminal justice system vests the prosecutor with broad discretion to determine whether to pursue a prosecution. *State* v. *Corchado,* 200 Conn. 453, 460, 512 A.2d 183 (1986). The discretionary power of the state to select an appropriate charge is, of course, "limited in the usual and lawful manner by the facts the prosecutor may be reasonably expected to prove at trial." *State* v. *Darden,* 171 Conn. 677, 682, 372 A.2d 99 (1976); see also *State* v. *Riggs,* 7 Conn. App. 180, 185, 508 A.2d 67, cert. denied, 200 Conn. 804, 510 A.2d 191, cert. denied, 479 U.S. 852, 107 S. Ct. 183, 93 L. Ed. 2d 118 (1986). "So long as he acts within the jurisdiction of his office it is not appropriate for a court to set policy for the performance of his prosecutorial function." *State* v. *Haskins,* supra, 474.

With respect to the allegations of prosecutorial misconduct regarding the retention of the risk of injury count, " 'the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 489, 442 A.2d 1320 (1982)." *State* v. *Couture,* 194 Conn. 530, 562, 482 A.2d 300, cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Palmer,* 196 Conn. 157, 163, 491 A.2d 1075 (1985). We must, therefore, determine whether the actions of the prosecutor, in refusing to drop the risk of injury charge involving J, in light of all of the circumstances, was so

egregious and so damaging to the defendant that it deprived him of a fair trial. *State* v. *Couture,* supra, 562–63.

The defendant has not demonstrated that he was harmed by the retention of this count. The trial court adequately instructed the jurors that the count pertaining to J was dismissed and that they were to disregard any testimony relating to that charge. In regard to this count, the jury heard the denial of J, the alleged victim, and an unanswered question posed to J's mother regarding whether J had made an allegation of sexual abuse against her father. Any other reference to J was made outside the presence of the jury. The defendant presents us with no basis on which we can find that he was prejudiced by the inclusion of this count. Moreover, the defendant's failure to file a motion to sever the count relating to J from the counts relating to L demonstrates his belief that no prejudice would result from the combined trial of all the counts. We therefore conclude that the defendant has failed to demonstrate that the retention of this count constituted prosecutorial misconduct. Thus, the defendant is not entitled to a new trial.

II

The defendant next claims that the trial court improperly restricted his right to cross-examine L concerning acts of misconduct indicative of a lack of veracity, in violation of his federal and state constitutional rights of confrontation. See United States Const., amends. VI and XIV; Conn. Const., art I, § 8; *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.2d 581 (1984). We disagree.

Prior to L's testimony, the state made an oral motion in limine[8] to prohibit the defendant from asking "ques-

---

[8] We note that an oral motion in limine does not meet the requirement of Practice Book § 196 that such motions be made in writing.

tions concerning any allegations of physical abuse of L . . . until there was a preliminary ruling from the court as to its admissibility." The trial court deferred ruling on this motion until the defendant's cross-examination of the victim. On cross-examination, defense counsel renewed his objection to the state's oral motion and, in support of his claim of prior allegations of physical abuse made by L, attempted to question L regarding two reports, a DCYS case transfer report and an East Hartford police department incident report. Both reports indicated that in 1989 L had made a complaint against another person, her mother's then boyfriend in which L related that he intentionally injured her by burning her with a hot light bulb, but that L later admitted that she had not been telling the truth, because the incident was an accident rather than intentional. Defense counsel also informed the court that he intended to test L's credibility by questioning her about other false claims she may have made. Specifically, defense counsel claimed he intended to ask L: "Do you always tell the truth and was there an incident . . . in May of 1989, this past year, in which you told a teacher and school social worker and a police officer something about [your mother's boyfriend] that in fact wasn't true?"[9] In response to the state's objections, the trial court precluded defense counsel from questioning the witness about the complaint indicated in the reports. The court concluded that the reports contained nothing relevant and nothing that would bring her credibility into play, and that they would be merely speculative and would mislead the jury.

---

[9] The events L described were substantially the same as those related to Officer G. A. Willett of the East Hartford police department by both her mother and her mother's boyfriend. Their statements indicate that the mother's boyfriend unscrewed a light bulb, which had recently been lit, to light the mother's cigarette. While reaching toward Mrs. Menzies, her boyfriend intentionally touched L under the chin with the bulb to show her that it was not too hot, since he was able to hold it comfortably by the base.

Defense counsel then sought to question the witness about her complaint, outside of the presence of the jury. The state argued that this line of inquiry was inadmissible because the words used in the reports were not those of the witness, but rather those of the author of the report. The state further asserted that even if the child had reported the incident in such a way as to indicate that the act was intentional and not accidental, it did not demonstrate that she was lying. The court denied defense counsel's request, stating that "there is nothing in the report that would indicate anything about the truth or veracity of the child. DCYS made a report that she was burned with a light bulb and the police investigated it and said it didn't appear to be intentional . . . . The issue is credibility of this young lady who as I read that report could have been telling the absolute truth that she was. There is nothing in there that indicates that she was—she said anything false. . . . I don't think this is relevant to the trial. The only way it could come in would be on the issue of credibility. There is nothing, from what I've seen, that really reflects directly on credibility. It's a side issue. So I don't think it's appropriate to question the witness on that particular issue."

Initially, it must be noted that a criminal defendant's right to impeach the witnesses against him implicates his constitutional right to confrontation. *State* v. *Rodriguez,* 180 Conn. 382, 393, 429 A.2d 919 (1980). The confrontation clause gives the defendant the right to confront the witnesses against him. Cross-examination to elicit facts tending to show motive, interest, bias, prejudice and lack of veracity is a matter of right and may not be unduly restricted. *State* v. *Oehman,* 212 Conn. 325, 330, 562 A.2d 493 (1989); *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985). The right of confrontation, however, is not absolute and is subject to reasonable limitation. *State* v. *Vitale,* supra,

401. "[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) *United States* v. *Owens,* 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988), quoting *Delaware* v. *Fensterer,* 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). Not every evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is constitutional error. *State* v. *Vitale,* supra, 403.

Prior acts reflecting adversely on a person's honesty bear sharply on the issue of veracity at trial, and subject to the court's discretion, may be admitted for purposes of impeachment. *State* v. *Martin,* 201 Conn. 74, 87, 513 A.2d 116 (1986); *State* v. *Coriano,* 12 Conn. App. 196, 204, 530 A.2d 197, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987). Admittedly, whether the witness had made false accusations of abuse in the past is relevant to her credibility and veracity and any evidence tending to establish such accusations would be admissible. Here, however, the trial court correctly concluded that the two reports had no bearing on the witness' credibility.

We conclude, after a detailed examination of the reports, that the trial court properly concluded that testimony by the witness about them would be irrelevant to the witness' credibility. The reports contain the judgment and impressions of the authors, based on their discussions with the victim, and are not a verbatim account of the conversation with the victim. The trial court properly concluded that the proffered reports contained nothing to indicate that L had lied and, therefore, were not relevant to her veracity. A trial court is vested with "broad discretion to determine . . . the relevancy . . . of evidence. . . . Only upon a showing of a clear abuse of discretion will this court set aside

on appeal rulings on evidentiary matters." (Citations omitted.) *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987); see also *State* v. *Moye,* 214 Conn. 89, 570 A.2d 209 (1990). The trial court did not abuse its discretion.

With respect to the trial court's ruling precluding the defendant from asking the witness on voir dire whether she had lied about the light bulb incident, we conclude that the trial court acted properly. Defense counsel proposed to ask the witness one question, whether she had lied about the incident involving the light bulb and her mother's boyfriend. We conclude that this limitation was proper because the witness' response would not have affected the trial court's ruling precluding defense counsel from questioning her about the comments indicated in the two reports.

### III

The defendant's third claim involves the special procedures the trial court adopted pertaining to L's testimony. Prior to trial, in a motion for special procedures pursuant to General Statutes § 54-86g (b),[10] the state requested that the trial court adopt the following procedures during L's testimony: (1) closing the courtroom to the public and press, except those persons who would

---

[10] General Statutes § 54-86g (b) provides: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child is taken: (1) Persons shall be prohibited from entering and leaving the courtroom during the child's testimony; (2) an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact; (3) the use of anatomically correct dolls by the child shall be permitted; and (4) the attorneys for the defendant and for the state shall question the child while seated at a table positioned in front of the child, shall remain seated while posing objections and shall ask questions and pose objections in a manner which is not intimidating to the child."

contribute to the welfare and well-being of the child; (2) permitting the guardian ad litem to sit with the child; (3) permitting the use of anatomically correct dolls or diagrams; (4) permitting the use of leading questions when necessary on direct examination of the child; (5) requiring counsel to question the child in a lowered voice while seated at a table positioned in front of the witness box.[11] The defendant takes issue with the second request which requires the guardian ad litem to sit with the child during her testimony. He argues that the results of this special procedure prejudiced the defendant, that the procedure was not warranted, that it heightened sympathy for L and that it enhanced her credibility. The defendant also argues that he was prejudiced by a delay between the direct examination and the cross-examination of the child. We do not agree.

A

The defendant contends that the requirement that the guardian ad litem sit with the child during her testimony was not warranted. He relies on *State* v. *Jarzbek,* 204 Conn. 683, 705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), for this assertion. In *Jarzbek,* our Supreme Court addressed the issue of whether, in a criminal prosecution involving alleged sexual abuse of children, a minor victim may testify through the use of a videotape made outside the physical presence of the defendant. See General Statutes § 54-86g (a).

Although, here, we are not concerned with taking testimony outside of the courtroom, the Supreme Court's analysis in *Jarzbek* is illustrative because the underlying concerns for requesting the procedures outlined in

[11] The assistant state's attorney argued to the court that he was seeking to have these procedures adopted as a less drastic alternative to the procedures outlined in General Statutes § 54-86g (a) and in an effort to protect the defendant's right to confrontation. General Statutes § 54-86g (a) involves taking the testimony of the child outside of the courtroom.

General Statutes § 54-86g (a) and (b) are the same. The *Jarzbek* court recognized that "it is by no means clear that sexually abused children are harmed, psychologically or otherwise, by the experience of testifying in the presence of their alleged abusers"; *State* v. *Jarzbek,* supra, 702; see also G. Melton, "Psychological Issues in Child Victim's Interaction with the Legal System," 5 Victimology 274 (1980); G. Goodman, "The Child Witness: Conclusions and Future Directions for Research and Legal Practice," 40 J. Soc. Issues, 157, 167–68 (1984); D. Whitcomb, E. Shapiro & L. Stellwagen, "When the Victim is a Child: Issues for Judges and Prosecutors," National Institute of Justice (1985) pp. 17–18; and "that some minor victims actually benefit from their participation in proceedings that give them a sense of power over those who have violated them and afford them a long awaited opportunity to achieve vindication." *State* v. *Jarzbek,* supra; G. Melton, "Sexually Abused Children and the Legal System: Some Policy Recommendations," 13 Am. J. Family Therapy 61, 64–65 (1985); C. Rogers, "Child Sexual Abuse and the Courts: Preliminary Findings," Social Work and Child Sexual Abuse (Conte & Shore Eds. 1982) pp. 145, 150. The court also noted, however, "the possibility that such a witness might be intimidated, or for any number of reasons inhibited, by the presence of the accused"; *State* v. *Jarzbek,* supra, 703; and that "[i]n such instances, affording the defendant the right of physical confrontation would undermine the purpose of confrontation, instead of advancing its truth-seeking goals." Id., 703–704.

In order to accommodate the competing concerns of the state and the defendant, the *Jarzbek* court mandated a case by case analysis "whereby a trial court must balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim

in question." Id., 704. The trial court must conduct "an evidentiary hearing, [to determine] whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony." Id. In order to satisfy its burden of proving a compelling need, the state must show, by clear and convincing evidence, that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Id., 705. The trial court must focus on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused.[12] Id.

Here, a hearing on the state's motion for special procedures was conducted prior to the commencement of trial.[13] The state presented evidence through the testimony of three witnesses, Jennifer Spector, David Mantell,[14] and the guardian ad litem, Attorney Barbara Ruhe, to the effect that adopting the proposed procedures would facilitate L's in-court testimony. Spector testified that she believed the presence of a guardian ad litem would "provide support for L throughout the testimony." Mantell testified that "it is helpful for child

[12] Although *Jarzbek* stands primarily for the proposition that the main focus of the court is on the reliability of the testimony, the attitude and bearing of the witness have a direct bearing on the witness' reliability.

[13] Although the *Jarzbek* court concluded that General Statutes § 54-86g (a) requires that there be an evidentiary hearing prior to the court's adoption of the procedures outlined therein, no such similar requirement has yet been adopted with respect to the procedures outlined in subsection (b). Because the parties have not raised the issue of whether subsection (b) requires an evidentiary hearing, and because a full evidentiary hearing was conducted here, we need not address that question.

[14] Defense counsel objected to Mantell's testimony on the ground that he was not qualified to state an opinion about L because he had examined only documents and reports pertaining to her but had never examined her personally. The trial court overruled the objection and permitted him to testify, stating that the objection would go to the weight of the testimony.

witnesses to have present at the time of their testimony a trusted person, being an adult person, who can comfort them and is physically present to offer them a sense of companionship through their courtroom presentation." The guardian ad litem testified that "L has indicated to me that it is her hope that the judge will permit me to stand or be near her because she said 'if I get really frightened will you hold my hand' and I have indicated to her that I would certainly hope the judge would permit that," demonstrating that she too believed that her presence at L's side while she was on the witness stand would facilitate her testimony.

The trial court concluded that there was clear and convincing evidence that L would be intimidated or otherwise inhibited in her testimony if the normal courtroom procedures were used and found a compelling need to grant specific portions of the state's motion.[15] Most significantly, the trial court ordered that "the guardian ad litem, an adult with whom the child may feel comfortable, and who is an officer of the court, will or may be seated close to the child during her testimony. She will be allowed to touch the child, L, but will not suggest or in any way communicate with her concerning what the answers to any question might be. The guardian ad litem will not participate directly in the trial."[16] Defense counsel objected to the court's ruling and noted his exception for the record.

The state's burden was to prove, by clear and convincing evidence, a compelling need to have the guard-

---

[15] The trial court noted that L is hearing impaired and might need assistance with her hearing aids during the course of her testimony.

[16] Additionally, the trial court ordered that during L's testimony (1) access to the courtroom would be restricted in the same manner as during the jury charge, (2) use of anatomically correct dolls or diagrams would be permitted, (3) leading questions would be permitted on direct examination where necessary, (4) counsel would be permitted to question the witness from a table positioned in front of the witness box, and (5) objections were to be made in a low voice so as not to startle the witness.

ian ad litem sit by the alleged victim's side during her testimony. Whether the state has satisfied this burden is a question of fact. It is not the role of this court to make factual determinations and conclusions. "It is the sole province of the trier of fact to evaluate [such] testimony, to assess its credibility, and to assign it a proper weight." Id., 706; *Johnson* v. *Fuller*, 190 Conn. 552, 556, 461 A.2d 988 (1983). We can only review such conclusions "to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did." *Zolan, Bernstein, Dworken & Klein* v. *Milone*, 1 Conn. App. 43, 47, 467 A.2d 938 (1983). On the basis of our review of the record, we conclude that the evidence adduced at the hearing on the state's motion for special procedures adequately supports the trial court's conclusions.

The defendant also claims that the presence of the guardian ad litem during L's testimony enhanced L's credibility and heightened sympathy for her. At the conclusion of L's direct examination, the trial court instructed the jury that "we did allow what we call the guardian ad litem to sit with the child. Please don't draw any inference from that. The purpose is simply to facilitate the child's testimony and don't draw any inferences from it. It just puts the child at ease in this setting . . . . Don't draw any conclusions . . . other than we are dealing with a child." Again, this instruction adequately explained to the jurors the purpose and function of the guardian ad litem and admonished them not to draw any inferences from her presence.

Moreover, the defendant has failed to establish that he was in any way prejudiced by the presence of the guardian ad litem. The guardian in no way interfered with the jury's ability to observe the witness' demeanor or to evaluate her credibility, nor did her presence suggest that the witness was a victim who required pro-

tection from the defendant. The court clearly explained that the guardian's presence was merely to facilitate the testimony of a child witness and not to protect the witness from the defendant. We, therefore, conclude that the trial court properly adopted the state's request that the victim be accompanied by the guardian ad litem during her testimony and that this procedure did not enhance L's credibility or heighten sympathy for her.

## B

L's direct examination was conducted on a Thursday. The cross-examination was delayed until the following Monday because of the unavailability of the guardian ad litem.[17] Defense counsel objected to the delay between the direct examination and the cross-examination, arguing that it prejudiced the defendant by emphasizing the witness' uncontroverted testimony and by unduly strengthening the intervening testimony. We find no merit in this argument.

The trial court has wide discretion in determining the order of proof. *State* v. *McCall,* 187 Conn. 73, 84, 444 A.2d 896 (1982). It is not unusual for the testimony of witnesses to be interrupted for one reason or another. See *Finch* v. *Weiner,* 109 Conn. 616, 618, 145 A. 31 (1929). The purpose of allowing discretionary variations from the logical order of proof relates largely to convenience or accommodation in forwarding the trial, usually to avoid the necessity of detaining or recalling a witness, or some similar consideration. Id. Departure from the regular order should not be permitted, however, where it would work injustice to either party. Id. Here, the defendant has failed to demonstrate that any injustice resulted from the delay in cross-examination. The testimony of the intervening witness, Spector, and

---

[17] Because of the trial court's earlier ruling regarding the presence of the guardian ad litem during L's testimony, her testimony could not be heard when the guardian was unavailable to accompany her.

presentation of the taped interview with the victim were in no way enhanced by the fact that they came after the direct, and, as yet, uncontroverted testimony of the alleged victim.

Moreover, the trial court instructed the jury about the disruption in the victim's testimony as follows: "[I]t would not really be possible to complete the examination this afternoon because of a conflict that the witness will not be available to us tomorrow, so what we are going to do, this happens quite frequently in trials, the cross-examination of the last witness will be put off until Monday morning . . . . That, as I say, is something that happens quite frequently and it's really the best thing we can do here, so we are going to adjourn now until ten o'clock tomorrow morning." This instruction adequately explained to the jurors that they should not draw any inferences from the delay in the witness' cross-examination because such an interruption was a common occurrence and that they should not blame either party for the suspension. Because the defendant has failed to demonstrate any injustice arising out of the trial court's variation from the traditional order of proof and the trial court appropriately explained the reason for the suspension of the cross-examination in a limiting instruction to the jury, the defendant's argument must fail.

IV

The defendant's final claim is that certain remarks by the assistant state's attorney during closing argument violated his privilege against compulsory self-incrimination as guaranteed by the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, resulting in an unfair trial. Because he did not object to these remarks at trial, the defendant seeks review under

*State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1965), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

In *State* v. *Golding,* supra, 239–40, the Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial if the following four conditions are met: (1) the record is adequate to review the alleged error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental constitutional right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. A defendant cannot prevail on an unpreserved constitutional claim unless all of the four conditions are met, any one of which may be considered first. *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d. 880 (1991). An examination of the defendant's claim fails, however, to reveal a constitutional violation that clearly deprived him of a fair trial, and, therefore, he cannot prevail on this claim.

In its final closing argument; see Practice Book § 874 (4); after the defendant had argued to the jury, the state in its rebuttal argument stated that the defendant failed to introduce or explain certain evidence. Specifically, the assistant state's attorney commented: "I would like to talk to you a little bit about the evidence that you don't have . . . there is certainly no evidence that the defendant was confused when he responded [to McQueeney's question whether he had sexually assaulted L two years earlier] by saying 'I don't know.' " The defendant takes issue with the comment concerning the defendant's possible state of confusion during his interview with McQueeney, and claims that this comment constituted an indirect comment on his failure to testify.

The defendant contends that implicit in the defendant's response "I don't know, I can't remember" was that, but for a state of confusion, an innocent person would not have answered as the defendant did and no evidence of confusion was presented. The defendant asserts that evidence of such confusion could have been supplied only by the defendant because the defendant's understanding of McQueeney's question was information possessed solely by him. He further asserts that the comment regarding the lack of evidence that the defendant was confused at that time was such that the jury would naturally interpret this to be a comment on his failure to testify.

The right of the accused not to take the stand is his constitutional privilege against compulsory self-incrimination. *Malloy* v. *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). Comment by the prosecuting attorney or the court on the defendant's failure to testify is prohibited by the fifth amendment to the federal constitution. *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct. 1228, 14 L. Ed. 2d 106 (1965).[18] Moreover, the Connecticut legislature has recognized and affirmed this right in adopting General Statutes § 54-84 (a) which provides in part: "(a) Any person on trial for [a] crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official . . . ."[19]

[18] The trial court properly instructed the jury that it should draw no adverse inference from the defendant's failure to testify. Specifically, the trial court instructed: "Now, in this case the defendant did not take the witness stand and testify. The law does not compel the defendant to take the witness stand and to testify and no inference of guilt may be raised and no unfavorable inference at all may be drawn from the fact that the defendant decides not to testify. You must not permit such a fact to weigh in the slightest degree against the defendant, nor should it interfere into your discussions or deliberations at all."

[19] Prior to the enactment of Public Acts 1977, No. 77-350, General Statutes (Rev. to 1977) § 54-84 (now § 54-84 [a]) provided in part: "The

"The parameters of our inquiry are well established. 'In its closing argument the state may properly call to the attention of the jury any portion of the evidence that stands uncontradicted. Such a comment becomes objectionable only when it focuses the attention of the jury on the failure of the defendant to testify and thus violates the holding of the United States Supreme Court in *Griffin* v. *California,* [supra] that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." . . . ' " *State* v. *Walker,* 206 Conn. 300, 307, 537 A.2d 1021 (1988). Further, even an indirect remark by the prosecuting attorney that draws the jury's attention to the failure of the accused to testify may also violate the accused's right. *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1269 (2d Cir.), cert. denied sub nom. *Leak* v. *Follette,* 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970).

The test for evaluating a prosecutor's argument asks whether " ' "the language used [by the prosecutor was] manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' " *State* v. *Walker,* supra; see also *United States ex rel. Leak* v. *Follette,* supra; *State* v. *Allen,* 9 Conn. App. 169, 179, 517 A.2d 1043 (1986), rev'd in part, 205 Conn. 370, 533 A.2d 559 (1987). Consequently, the prosecutor is prohibited from asking for explanations that only the defendant can provide because such questions are an indirect comment on the defendant's failure to testify. *State* v. *DeMartino,* 7 Conn. App. 292, 295, 508 A.2d 809 (1986).

neglect or refusal of an accused party to testify shall not be commented upon to the court or jury."

An analysis of the remarks of the assistant state's attorney clearly shows that the prosecutor did not point to the defendant as the only person who could supply the missing explanations and answers. The assistant state's attorney properly commented on the defendant's responses to the questions posed by McQueeney during their initial confrontation. He properly remarked that the defendant responded that he did not know and could not remember whether he had abused L two years earlier. This dialogue was introduced at trial through the testimony of three witnesses, Spector, L's mother and McQueeney, all of whom were present during the conversation and who testified that they were able to observe the defendant during the conversation. Additionally, each of the three witnesses was specifically asked whether the defendant appeared to be confused at any time during his interview with McQueeney. All responded in the negative. Because evidence of a mental state need not be proven by direct evidence but may be proven by circumstantial evidence; *State* v. *Steiger,* 218 Conn. 349, 376–82, 590 A.2d 408 (1991) (court reached conclusion that defendant was aware of the wrongful nature of his actions based on testimony of third parties concerning the defendant's conduct); evidence of the defendant's confusion was not something that could be provided solely by the defendant and no other. Rather, this remark in the prosecutor's closing argument was a comment on the testimony of three independent witnesses. Thus, the comment that there was no evidence that the defendant was confused during his conversation with McQueeney did not seek an explanation that only the defendant could provide, and, therefore, was not an indirect comment on the defendant's failure to testify. *State* v. *DeMartino,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.