STATE OF CONNECTICUT *v.* JOHN C. HOEPLINGER
(9791)

DALY, O'CONNELL and HEIMAN, Js.

Argued March 24—decision released May 26, 1992

*Ira B. Grudberg,* with whom, on the brief, was *Steven D. Ecker,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes

§ 53a-55 (a) (1). He claims that (1) the jurors' inappropriate conduct, coupled with the brevity of their deliberations, violated his right to a fair trial, (2) the trial court improperly excluded a tape recording of a 911 telephone call he had made, and (3) the prosecutor, in his closing argument, improperly commented on the defendant's failure to testify. We affirm the trial court's judgment.

This case involves the second trial of the defendant, John C. Hoeplinger, for killing his wife in their Easton home in the early morning of May 7, 1982. The defendant was indicted by a grand jury and charged with murder in violation of General Statutes § 53a-54a (a). See General Statutes § 54-45. He was convicted, after a jury trial, of manslaughter in the first degree, a lesser included offense. See General Statutes § 53a-55 (a) (1). We affirmed that judgment of conviction. *State* v. *Hoeplinger*, 9 Conn. App. 147, 517 A.2d 632 (1986). Our Supreme Court granted certification, reversed our judgment, and remanded the case to us with direction to set the judgment aside and to remand the case to the Superior Court for a new trial. *State* v. *Hoeplinger*, 206 Conn. 278, 537 A.2d 1010 (1988). The defendant again elected a jury trial, and again was convicted of manslaughter in the first degree. This appeal followed.

The defendant's second trial lasted more than four weeks. The state presented a case based on a complex web of circumstantial, largely forensic, evidence. More than thirty witnesses testified. More than 250 exhibits were introduced. The transcript of the proceedings filled over 2600 pages. Numerous expert witnesses testified in considerable detail regarding sophisticated forensic analyses, including blood spatter analysis, blood typing, absorption elution, latus crust testing and bulbochaete, seta and diatom analyses. The state also presented evidence regarding the defendant's marital problems and his history of spousal abuse. There was no eyewitness to the crime.

The state theorized that the defendant attacked the victim while she slept on a couch in the family room of their house, dragged her outside to a wooded area off the driveway, dragged her to a second wooded area, returned her to the house, placed her on the same couch on which he had initially assaulted her and smashed in her skull with a brick. The defendant vigorously disputed the state's evidence and the inferences that the state asked the jury to draw from it, argued that the state's evidence contained manifest inconsistencies and presented affirmative evidence to support his theory of third party guilt.

I

The defendant first claims that the jurors' inappropriate conduct, coupled with the brevity of their deliberations, violated his right to a fair trial. The following additional facts are necessary to resolve this issue. Counsel delivered final arguments during the morning of October 18, 1990. The trial court charged the jury that afternoon. The jury returned a verdict of guilty of manslaughter in the first degree at 3:55 p.m. the following day.

On October 23, 1990, the defendant filed a motion for a new trial, claiming that "[t]he jury did not properly or sufficiently consider the evidence in the case." On November 30, 1990, the trial court held an evidentiary hearing on the defendant's motion for a new trial. At the evidentiary hearing, the defendant's current wife testified that she heard periodic outbursts of laughter coming from the jury room from about 12:15 p.m. on October 19, 1990, until just before the jury delivered its verdict. She further testified that the loudest outburst occurred just before the jury delivered its verdict. The defendant also testified at the evidentiary hearing that on October 19, 1990, he heard sounds of laughter coming from the jury room. He estimated that

the average time between the episodes of laughter was twenty minutes and that the loudest outburst came just before the jury returned its verdict. The defendant claimed that the jurors' conduct, viewed in light of the brevity of their deliberations and the complexity of the case, deprived him of his right to a fair trial by an impartial jury. See U.S. Const., amend. VI; Conn. Const., art. I, § 19. The trial court denied the defendant's motion without comment.

Although the trial court did not place its reasons for denying the motion on the record, the defendant did not seek articulation of the basis of that decision. See Practice Book § 4051. Thus, we can only speculate as to which of the many legitimate reasons for denying the motion for a new trial that the trial court in fact employed. Where a motion for a new trial is based on juror misconduct, the rule in this state is that, regardless of the impropriety of the jurors' actions, the defendant cannot prevail unless it appears that the misconduct was occasioned by the prevailing party or someone on his behalf, that the misconduct indicated an improper bias in the jurors' minds and that the misconduct harmed the defendant. See *State* v. *Asherman,* 193 Conn. 695, 735–36, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Perhaps the trial court did not credit the testimony of the two witnesses. If so, its action is virtually unreviewable. See *Speed* v. *DeLibero,* 215 Conn. 308, 314, 575 A.2d 1021 (1990) (the trial court in the best position to judge the credibility of witnesses). Perhaps the trial court believed the two witnesses but concluded that the defendant had failed to establish prejudice. See *Asherman* v. *State,* 202 Conn. 429, 442, 521 A.2d 578 (1987). Perhaps it found that the juror misconduct was not occasioned by the state. *State* v. *Asherman,* supra. On the record before us, it is impossible to discern the basis on which the trial court denied the motion for a new trial.

The appellant bears the burden of providing us with a record adequate to review a claimed error. *State* v. *Laracuente,* 205 Conn. 515, 520, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Our role " 'is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court.' " *State* v. *Tirado,* 194 Conn. 89, 92, 478 A.2d 606 (1984); *State* v. *Chairamonte,* 189 Conn. 61, 64, 454 A.2d 272 (1983). Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative. See *State* v. *Tirado,* supra, 92–93.

Because the defendant has not provided us with an adequate record on which to review his claim, his claim must fail.

## II

The defendant next asserts that the trial court improperly excluded a tape recording of a 911 telephone call he had made.

The jury reasonably could have found the following additional facts, which are necessary to resolve this issue. On May 7, 1982, at 4:55 a.m., the defendant called 911 and requested that an ambulance be sent to his house at 15 Deerfield Drive, stating "my wife is in serious shape," "she's bloody," and "[the blood is] all over her face and head." Officer Raymond Osborne of the Easton police department arrived at the scene at 5:01 a.m. and found that the front porch light, the lights adjacent to the driveway and the interior house lights were on. Osborne then observed the defendant emerge from the house sobbing, distraught and shaken, declaring "she's got blood all over her." The defendant admitted Osborne into the house and led him to the family room, where Osborne saw the defendant's wife lying

face up on a couch, wrapped in a sheet and blankets. Osborne observed that the victim's skull appeared to be caved in and that there was much blood on and around her head.

Officer Richard Schwartz, also of the Easton police department, arrived on the scene by 5:07 a.m. Upon entering the house, Schwartz observed the defendant kneeling next to wife, sobbing and shaking.

Rose Marie Brunetti, an Easton police department dispatcher, had received the defendant's call and dispatched Osborne and Schwartz. The caller identified himself as John Hoeplinger and told her that he needed an ambulance because his wife was seriously hurt.

When the defense attempted to introduce the tape recording into evidence, the state interposed a hearsay objection. The defendant claimed that the tape recording was not hearsay because it was not being offered to prove the truth of its contents but to corroborate testimony regarding the defendant's demeanor at the scene. The defendant claimed alternatively that the tape recording was admissible under the excited utterance and best evidence exceptions to the hearsay rule. The trial court sustained the state's objection, concluding that the evidence was hearsay that fell under no recognized exception to the prohibition on such testimony.

Because the state objected only on hearsay grounds, we must first determine whether the court correctly concluded that the tape recording was excludable hearsay. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. . . ." (Internal quotation marks omitted.) *State* v. *Wills,* 221 Conn. 518, 522, 605 A.2d 1359 (1992). We will review the claim

of inadmissibility only on the ground offered to the trial court. *State* v. *Weinberg,* 215 Conn. 231, 246, 575 A.2d 1003, cert. denied,    U.S.   , 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

"A statement made out of court that is offered to establish the truth of the facts contained in the statement is hearsay. *Murray* v. *Supreme Lodge, N.E.O.P.,* 74 Conn. 715, 718, 52 A. 722 (1902). The test is whether the statement is offered to prove the truth of the matters in the statement. If it is, it is hearsay; if offered for some other purpose, it is not. *State* v. *Miller,* 154 Conn. 622, 629, 228 A.2d [136] (1967)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.1.1. A statement that is offered, not for the truth of its contents, but to establish only that the conversation had actually taken place, is not hearsay. *State* v. *Miller,* supra. The defendant offered the tape recording not for the truth of its contents but to establish that he made a telephone call to the police emergency number and to show the defendant's state of mind when he made the call. As such, the tape recording was not hearsay. The trial court incorrectly concluded that it was.

Our inquiry does not, however, end with the conclusion that the trial court improperly excluded this evidence. We must next determine whether the error was harmful. The defendant concedes that his entitlement to the admission of this evidence is based only on evidentiary, not constitutional, grounds. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. The defendant must show that it is more probable than not that the erroneous action of the court affected the result. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Moody,* 214 Conn. 616, 629, 573 A.2d 716 (1990). Because the tape recording was cumulative evidence, the defendant cannot make this showing.

The jury had the following evidence before it. The defendant called the 911 emergency number and requested that an ambulance be sent to his address. When Osborne arrived at the scene, approximately six minutes after the defendant had called 911, the defendant was sobbing, distraught and shaken. In addition, when Schwartz arrived at the scene within twelve minutes of the call, the defendant was kneeling next to his wife, sobbing and shaking.

Thus, the jury had before it evidence that the defendant called 911 to report his wife's injuries. Further, the evidence of the defendant's state of mind at 5:01 and 5:07 a.m. was sufficient evidence of his state of mind at 4:55 a.m., the time he called 911, to render the tape recording cumulative as to this point as well. Accordingly, the defendant cannot show that the trial court's refusal to admit the tape recording constituted reversible error. See *State* v. *McIver,* 201 Conn. 559, 564, 518 A.2d 1368 (1986).

### III

In his final claim, the defendant asserts that the prosecutor, in his closing argument to the jury, improperly commented on the defendant's failure to testify. We disagree.

The following additional facts are necessary to resolve this issue. Henry Lee, the chief criminalist for the state of Connecticut and director of the forensic laboratory for the Connecticut state police, and Herbert MacDonell, director of the laboratory for forensic science, an independent consulting laboratory, testified during the state's case-in-chief as to the presence of medium velocity blood spatter patterns on the defendant's jeans. Both testified that this evidence was consistent with the defendant's being in the vicinity of the victim when she was beaten. On cross-examination,

both witnesses testified that medium velocity spatter also can be caused simply by shaking a bloody hand.

In his closing argument, the prosecutor reminded the jury that Lee and MacDonell testified to the presence of medium velocity blood spatter on the defendant's jeans, and suggested that this evidence was consistent with the defendant being in the area of the beating at the time it was inflicted. The prosecutor then asked, "But did you hear anybody—any bit of testimony from anyone indicating that would have occurred any other way than by being next to the beating? Was there any testimony—did you hear anybody's testimony of anybody seeing Mr. Hoeplinger going like this, walking around the premises?" The defendant objected to these questions as improper comments on his failure to testify and requested a curative instruction. The trial court instructed the jury that the defendant was not obligated to present any evidence. The defendant took no further objection or exception.[1]

---

[1] The entire exchange was as follows: "[Prosecutor]: There's some medium velocity spatter on the defendant's jeans identified by Dr. Lee. There's some identified by Dr. MacDonell. There's other ways you can get medium velocity spatter other than by hitting somebody with a brick, okay. So what can you infer from that? Well, if you believe that it corroborates all the other evidence, you believe he was in the area of the beating at the time the beating was inflicted. Could it have been done another way? Sure, it could have been done another way. Is it likely under the circumstances or the facts as you have them here? I don't know; you have to decide that. *But did you hear anybody—any bit of testimony from anyone indicating that would have occurred any other way than by being next to the beating? Was there any testimony—did you hear anybody's testimony of anybody seeing Mr. Hoeplinger going like this, walking around the premises?*

"[Defense Counsel]: If the court please, I object to that, because I think the inference there is clear and I think he should know that's improper, because all of this happened long before the police arrived on the scene. And I think that's a direct attempt to invoke the fact that this man exercised his constitutional privilege. And I would ask the court to instruct the jury accordingly.

"[Prosecutor]: Absolutely not, Your Honor. I prefaced it by indicating what other people observed. I thought I made that clear and—

"The Court: Well, I'd just remind the jury that it is the sole burden of the state and—and I will tell you in the charge that Mr. Hoeplinger has

The defendant claims that the prosecutor's remarks were an indirect comment on his failure to testify because they raised questions that only he reasonably could have been expected to answer. See *State* v. *DeMartino,* 7 Conn. App. 292, 295, 508 A.2d 809 (1986). He asserts that because he was the only person present when blood got on his clothes, only he could have been expected to offer an explanation as to the source of the blood.

Prosecutorial comment on a defendant's failure to testify is prohibited by the fifth amendment to the United States constitution; *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); as well as by Connecticut statute. General Statutes § 54-84 (a).[2] Similarly, a prosecutor may not pose questions in his closing argument that only the defendant can answer. *State* v. *Bowens,* 24 Conn. App. 642, 650, 591 A.2d 433, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991); *State* v. *DeMartino,* supra. The state may, however, " 'comment on a defendant's failure to call witnesses to contradict the factual character of the government's case; *United States* v. *Dioguardi,* 492 F.2d 70, 81–82 (2d Cir.), cert. denied, 419 U.S. 873 [95 S. Ct. 134, 42 L. Ed. 2d 112] (1974); as well as his fail-

no obligation to present any evidence in this case in defense. And I will go into great detail about that. But in the meantime, any thoughts about what the defense has offered is to be erased from your mind as far as this particular subject matter that [the prosecutor] is considering or addressing." (Emphasis added.)

[2] Although the defendant asserts that his rights under both the state and federal constitutions were violated, he does not provide us with a separate analysis of his state constitutional claim. Both we and the Supreme Court have declined to review a defendant's state constitutional claim, deeming it to have been abandoned, when the defendant has not separately briefed and analyzed that claim. See, e.g., *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Redente,* 19 Conn. App. 521, 531 n.5, 563 A.2d 1365 (1989). That declination, however, does not mean that we are not able to review such a claim if we choose to do so. See *State* v. *Geisler,* 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985, cert. denied, 200 Conn. 918, 597 A.2d 342 (1991).

ure to support his own factual theories with witnesses. *United States* v. *Rodriguez,* 556 F.2d 638, 641 (2d Cir. 1977); *United States* v. *Lipton,* 467 F.2d 1161, 1168 (2d Cir. 1972), cert. denied, 410 U.S. 927 [93 S. Ct. 1358, 35 L. Ed. 2d 587] (1973).' *United States* v. *Bubar,* 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977)." *State* v. *Allen,* 9 Conn. App. 169, 178–79, 517 A.2d 1043 (1986), rev'd on other grounds, 205 Conn. 370, 533 A.2d 559 (1987). In reviewing a claim of indirect prosecutorial comment on a defendant's failure to testify, we determine whether the language used was "manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Internal quotation marks omitted.) *State* v. *Menzies,* 26 Conn. App. 674, 696, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992); *State* v. *Bowens,* supra.

The prosecutorial remarks at issue in this case could not reasonably have been construed as an improper comment on the defendant's failure to testify because the prosecutor did not identify the defendant as the only person who could provide the missing explanations. See *State* v. *Menzies,* supra, 697. The prosecutor's rhetorical question regarding whether any witness testified as to how the spattered blood could have gotten on the defendant's pants if the defendant were not near the victim during the beating was in fact answered by both Lee and MacDonell, who testified that similar patterns could have been cast off from a person's hand. The prosecutor's query as to whether anyone testified to having seen the defendant walking around the premises "going like this" also could have been answered by someone other than the defendant. Indeed, Ralph and Joan Altieri, the defendant's neighbors, testified that they noticed that lights were on in the defendant's house and on his deck and driveway late on the night

of the incident. Joan Altieri testified that the premises were "lit up like a park" at 3 a.m., contrary to the Hoeplingers' usual practice. Clearly, these witnesses could reasonably have been expected to testify regarding whether they saw the defendant walking around the premises that night. This is not the "exceedingly rare case where the defendant alone could possibly contradict the government's testimony." *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1269 (2d Cir. 1969), cert. denied sub nom. *Leak* v. *Follette,* 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970); *State* v. *Evans,* 165 Conn. 61, 72, 327 A.2d 576 (1973).

Our review of counsel's final argument leads us to conclude that the language complained about could not reasonably be construed as an improper comment on the defendant's failure to testify and that the defendant's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.