GERBER AND HURLEY, INC. *v.* CCC
CORPORATION ET AL.
(12545)

FOTI, HEIMAN and SPEAR, Js.

Argued September 30, 1994—decision released January 3, 1995

*Marc P. Mercier,* for the appellant-appellee (defendant CCC Corporation).

*Elias A. Alexiades,* for the appellee-appellant (plaintiff).

FOTI, J. The defendant CCC Corporation (CCC)[1] appeals from a judgment rendered in favor of the plain-

---

[1] In addition to the named defendant, Hector Cyr is a defendant. He has not appealed. Thus, when we refer to the defendant, we refer only to CCC Corporation.

tiff, after a trial to the court, for the amount of $111,612.08 together with interest and costs. The defendant claims that the trial court (1) improperly concluded on the basis of the facts found that a ratification had occurred, (2) applied an improper legal standard for ratification, (3) improperly concluded on the basis of the facts found that apparent authority existed, (4) applied an improper legal standard in determining the existence of apparent authority, and (5) improperly concluded on the basis of the facts found that the plaintiff had acted in good faith. The plaintiff has cross appealed, alleging that the trial court improperly calculated damages. We affirm the judgment of trial court on the appeal and reverse the judgment, in part, on the cross appeal.

This is an action brought in separate counts against CCC and Hector Cyr, alleging payment due and owing for goods sold and delivered on an open account pursuant to a credit agreement. On March 27, 1991, Cyr entered into a credit agreement with the plaintiff. Cyr signed that agreement twice, once as president of CCC and once individually as a personal guarantor of payment on the account. Neither defendant disputed the amount of the debt.

The record discloses the following facts. The plaintiff, a Connecticut corporation engaged in the business of selling roofing materials, had been selling goods to General Roofing and Sheet Metal, Inc. (General), on credit. In 1991, sales on credit to General ceased and the plaintiff entered into a credit agreement with CCC, knowing that Cyr, president of CCC, was also president of General. Thereafter, goods were supplied to CCC and the plaintiff issued corresponding invoices to CCC. The credit agreement provided for the payment of interest on the outstanding balance. The outstanding balance at the time of trial was $133,512.82 and the outstanding interest was $32,131.54, totaling $165,644.36. At

some point during the transactions, the plaintiff had received three checks totaling $30,000, which were drawn on General's bank account and applied to CCC's outstanding balance pursuant to instructions from Cyr. The plaintiff's complaint sought payment of the amount remaining after deducting the $30,000 payment.

CCC does business as a real estate company. It is authorized, under its certificate of incorporation and bylaws, to transact any lawful business. General is a tenant of CCC, leases equipment from CCC and uses a CCC truck to transport roofing materials. The materials sold to CCC through the credit agreement were used by General.

By its pleading, CCC denied that it owed a debt to the plaintiff, and set forth five special defenses. Two of these special defenses stated the following: (1) "The defendant, Hector Cyr, had no authority to bind CCC Corp. to any credit agreement or make purchases on behalf of CCC Corp. which the plaintiff was aware of at the time the goods described in the complaint were purchased and the credit application was signed"; and (2) "The defendant, CCC Corp., is not a partnership but a corporation and Hector Cyr had no authority to make the purchases described in the complaint or bind the corporation to such a credit agreement."

## I

### THE APPEAL

We begin our analysis with the trial court's finding that CCC ratified the credit agreement and is estopped from denying ratification.[2]

---

[2] The trial court found that the plaintiff sustained its burden of proof that Cyr had apparent authority as CCC had invested him with unfettered managerial control. The court found that Cyr, a corporate officer, was authorized to act on behalf of CCC, that Cyr signed the credit agreement on behalf of CCC, and that the plaintiff acted in good faith in reliance on that agreement with CCC. The court also accepted the alternative argument that CCC

Our Supreme Court has frequently held that ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . . [requiring an] acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. . . ." (Citations omitted; internal quotation marks omitted.) *Russell* v. *Dean Witter Reynolds, Inc.*, 200 Conn. 172, 185, 510 A.2d 972 (1986). In its memorandum of decision, the trial court stated that "[n]otwithstanding Cyr's argument that the materials were ordered for the benefit of General Roofing, the court finds that CCC, with knowledge of the facts, accepted and retained the benefits of the goods and supplies provided by the unauthorized act; it thereby ratified the credit agreement and will be estopped to deny ratification." The trial court relied on *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 Conn. 520 (1871), as authority for its conclusion that CCC is estopped from denying ratification.[3]

The defendant argues that the facts found by the court in its memorandum of decision do not support a finding of ratification. The defendant also claims that the trial court made factual errors in finding that CCC knew of Cyr's conduct or had full and complete knowledge of all material facts connected with the sales agreement, and that CCC retained the benefit of the contract.[4]

---

had ratified the agreement and was estopped from denying ratification. Because of our disposition of this claim, we find it unnecessary to address the defendant's other claims.

[3] The holding in *Perry* v. *Simpson Waterproof Mfg. Co.*, supra, 37 Conn. 534, states: "A corporation will also be bound by the unauthorized acts of its president if it subsequently ratifies those acts, or so conducts itself with reference to them as that it ought to be estopped from denying his authority; and generally, the doctrine of estoppel will apply whenever the corporation receives and retains the benefit of the contract."

[4] The defendant acknowledges that the memorandum of decision is not very clear as to whether the knowledge was found to be actual or imputed

"An appellate court cannot find facts or draw conclusions from primary facts found, but may only review such findings to see whether they might be legally, logically and reasonably found." *Katz Realty, Inc.* v. *Norwalk Fabricators, Inc.*, 14 Conn. App. 396, 401, 541 A.2d 519 (1988). The duty of providing us with a record adequate to review claims, including those of a factual nature, rests with the appellant. Practice Book § 4061. We cannot guess as to the existence of a factual predicate. *State* v. *Hoeplinger*, 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992).

The trial court did not set forth any facts or reasons to support its conclusion that CCC had ratified the credit agreement. The defendant did not seek an articulation, nor did it seek to correct any finding in the trial court's memorandum of decision.[5] While it is the duty of the judge who tried the case to set forth the basis of that decision; *Powers* v. *Powers*, 183 Conn. 124, 125, 438 A.2d 845 (1981); if the defendant, as appellant, claims that the court's memorandum of decision lacks a sufficient factual basis or is unclear or incorrect, it is that party's burden to have corrected or perfected that record. It is incumbent on the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. *Walton* v. *New Hartford*, 223 Conn. 155, 165–66, 612 A.2d 1153 (1992). Without an adequate record, we can only speculate as to the basis for the trial court's decision. Our role "is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *State* v. *Hoeplinger*, supra, 27 Conn. App. 647.

---

and whether it was of some or all of the facts connected with the agreement. The defendant also points out that the court never spelled out the benefit to CCC.

[5] The plaintiff filed a motion to correct that was denied by the court.

Because the defendant has not provided us with an adequate record on which to review its claim, its claim must fail.

## II

### THE CROSS APPEAL

The plaintiff has cross appealed, alleging that the trial court improperly calculated damages. It was established at trial that the outstanding balance owed by the defendant, excluding interest, was $133,512.82. The amount of outstanding interest was $32,131.54. The total debt was determined to be $165,644.36. The trial court awarded the plaintiff $111,612.08, with interest from the time of judgment. The plaintiff claims that the trial court (1) should not have deducted $30,000 from its calculation of the plaintiff's damages and (2) improperly calculated the amount of interest owed. We reverse the judgment in part and affirm it in part.

The plaintiff points out that it had received three checks totaling $30,000 drawn on General's bank account and applied to CCC's outstanding balance pursuant to instructions from Cyr. The outstanding balance claimed by the plaintiff was the amount remaining after deducting the $30,000 payment. Despite the fact that the plaintiff had already deducted the $30,000 from the amount owed by CCC, the trial court deducted $30,000 in its calculation of damages. The trial court held, "However, the General Roofing Co. submitted three checks to [the plaintiff]. . . . The checks were issued by General Roofing to [the plaintiff] without any marking indicating where the checks should be applied. The plaintiff claims he was issued an oral order to apply the checks to CCC. The court cannot find any valid argument to justify that claim. Therefore, the court gives CCC credit of $30,000 against the outstanding debt. Therefore, utilizing the balance as shown on the plain-

tiff's balance sheet, which amounts to $141,612.08,[6] deducting the $30,000 received and applied erroneously to the CCC Corporation, the court finds for the plaintiff in the amount of $111,612.08 with interest and costs, interest from the time of this judgment only, as the interest has been factored in by the plaintiff in his demand."

## A

The plaintiff first claims that the trial court improperly calculated damages by deducting the $30,000 from the outstanding balance owed by the defendant. We agree.

As a general rule, the determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 309–10, 460 A.2d 488 (1983); *Amwax Corp.* v. *Chadwick*, 28 Conn. App. 739, 745, 612 A.2d 127 (1992). On the basis of our review of the record, we conclude that the trial court's determination of damages in this case was clearly erroneous. The amount of the plaintiff's claim reflected outstanding amounts only, after crediting all payments, and the amount of the claim was not disputed by the defendant. After the trial court noted that the $30,000 had been applied to the balance owed by CCC, the court improperly proceeded to deduct $30,000 from the balance claimed by the plaintiff. This resulted in the $30,000 being subtracted twice from CCC's balance, first by the plaintiff upon receipt and then by the court. The action of the trial court in deducting this money from the plaintiff's claim was clearly erroneous.

## B

The plaintiff also claims that the trial court improperly omitted a substantial amount of interest from the

[6] The plaintiff's original complaint, dated July 16, 1992, showed the amount due as $141,612.08.

damage award. The court calculated the amount of interest awarded on the basis of the outstanding balance reflected in an attachment to the plaintiff's original complaint. The court found that interest was included by the plaintiff in this amount and, therefore, awarded interest only from the time of judgment. The plaintiff claims that the trial court should have included interest from the commencement of the action to the time of judgment. We find this claim to be without merit. The plaintiff has not demonstrated that the court's determination of interest was clearly erroneous.

The judgment is affirmed on the defendant's appeal. The judgment is reversed in part on the plaintiff's cross appeal and the case is remanded with direction to render judgment for the plaintiff in the amount of $141,612.08 with interest from the date of judgment and costs.

In this opinion the other judges concurred.