DIEGO MICELI ET AL. *v.* GARRY C. HELYER ET AL.
(13455)

Schaller, Spear and Cretella, Js.

Argued September 25, 1995—decision released February 13, 1996

*Henry C. Winiarski, Jr.*, for the appellants (plaintiffs).

*Sandra Rachel Baker*, with whom were *Vincent F. Sabatini* and, on the brief, *Paul M. Cramer*, for the appellee (named defendant).

CRETELLA, J. The plaintiffs, Diego Miceli and Theresa Miceli, appeal from the judgment for the named defendant[1] rendered by the trial court in the plaintiffs' action for breach of contract involving the sale of cer-

---

[1] The plaintiffs initially sued the named defendant, Garry C. Helyer, and Merrill Lynch Realty Company. The plaintiffs settled their claims against Merrill Lynch Realty and the counts of the complaint directed against it were withdrawn. The matter was tried against Helyer only. For purposes of this opinion, we will refer to Helyer as the defendant.

tain residential real property. On appeal, the plaintiffs argue that the trial court improperly (1) concluded that the plaintiffs' failure to provide a satisfactory water test report constituted the failure of a condition precedent to the contract, (2) admitted evidence regarding agency when agency was not pleaded by the defendant, and, even if properly considered, found that the plaintiffs' broker was acting as the agent of the plaintiffs, and (3) concluded that there was a delay on the part of the plaintiffs in addressing the water problem and that extensions of the closing date were granted so that the plaintiffs could close on their new residence. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiffs and the defendant executed a contract for the sale of the plaintiffs' house to the defendant for $456,200. The contract specified that the closing take place on or before October 1, 1988, and contained a mortgage contingency clause in the amount of $365,000. The contract also contained various addenda making the contract contingent on satisfactory water, structural, termite, septic system and radon inspections. The contract also contained a liquidated damage clause that provided for the plaintiffs to retain the $15,000 deposit of the defendant if the defendant breached the contract.

On August 12, 1988, the defendant obtained a mortgage commitment from First Federal Savings in the amount of $365,000, requiring that the closing take place on or before forty-five days from that date, or September 26, 1988. The mortgage commitment was "subject to a satisfactory well water analysis as to potability and E.D.B." The agent with whom the plaintiffs had listed the property, Merrill Lynch Realty Company (Merrill Lynch), undertook to have the well water tested at the expense of the defendant. The test was unsatisfactory and the defendant paid the test fee in accordance with the contract.

Although the defendant could have then rescinded the contract and had his deposit returned to him, he agreed to extend the closing to allow the plaintiffs time to correct the water problem. The bank agreed to extend the mortgage commitment date, and, notwithstanding the fact that the delay in closing would require the defendant to pay a higher interest rate on that mortgage commitment, the defendant agreed to absorb such cost. The parties agreed to extend the closing date to the end of November, 1988, so that the plaintiffs could close on the house that they were purchasing.

The parties did not reach an agreement as to who would pay the cost of any additional water tests. Merrill Lynch arranged to have successive tests performed and the reports were sent directly to the plaintiffs. The defendant never received a copy of the reports and was never asked to pay for any subsequent reports.

After several delays, the closing was scheduled for December 9, 1988, at the closing office of the bank in Glastonbury. The defendant and his wife were present on that date, as well as the defendant's attorney and the attorney for the bank. The plaintiffs were not present but their attorney was there with appropriate pre-signed documents. As the closing commenced, the attorney for the bank requested the water report. The plaintiffs' attorney called his office in Hartford and was told that the water test report was satisfactory and would be brought right over. The parties waited for one and one-half hours for the report to arrive. Eventually, the attorney for the bank stated that the closing could not take place that day and he left.[2] The defendant, his wife and his lawyer also left. The plaintiffs' attorney continued to wait and eventually the report arrived. The report, which was dated December 9, 1988, the

---

[2] The record reveals that the closing was scheduled for 10 a.m. on December 9 and concluded at approximately 11:30 a.m.

date of the closing, was addressed to the plaintiff Diego Miceli. December 9 was the last date that the closing could take place at the specified mortgage rate, which had already been increased due to the November postponement.

The plaintiffs then brought this action against the defendant alleging that they were ready, willing and able to perform the contract on December 9, 1988, and that they incurred financial losses due to the defendant's failure to pay the purchase price and take title on that date.[3] The trial court held that it was the responsibility of the plaintiffs to pay for the second water test and that the December 9 closing did not take place because the water test report was not provided. The court therefore ordered that the defendant's $15,000 deposit held by Merrill Lynch be returned to the defendant. The plaintiffs then took this appeal.

I

The plaintiffs first argue that the trial court improperly found that their failure to supply a satisfactory water test at the closing constituted the failure of a condition precedent to the contract. The plaintiffs contend that they had no contractual obligation to produce an analysis for either the defendant or his mortgagee. They argue that although the contract provisions in question were intended to be conditions precedent to the defendant's obligation to perform his agreement to purchase, they could not be invoked to excuse the defendant's performance on December 9, 1988. We disagree.

We note initially that "[t]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass

---

[3] In this action, the plaintiffs seek to retain the defendant's deposit pursuant to the liquidated damages clause in the contract.

upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Citation omitted; internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 40–41, 632 A.2d 1134 (1993).

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . If the condition precedent is not fulfilled the contract is not enforceable." (Citations omitted; internal quotation marks omitted.) *Luttinger* v. *Rosen*, 164 Conn. 45, 47–48, 316 A.2d 757 (1972); see *Feinberg* v. *Berglewicz*, 32 Conn. App. 857, 860, 632 A.2d 709 (1993). It is clear that unless a satisfactory water test report was produced, the defendant had no obligation to purchase the property. The trial court found that the plaintiffs were obligated to produce the report as a condition precedent to the contract[4] and that, without the report, there was no right to performance. When the condition precedent failed, the contract terminated.

According to the plaintiffs, however, the water test addendum did not require the plaintiffs to supply any documentation to the defendant. The plaintiffs argue that part b of paragraph eleven[5] of the contract simply

---

[1] The trial court referred both to the parties' contract and to the mortgage commitment from the bank to the defendant in support of its conclusion that the plaintiffs' failure to provide the water test constituted the failure of a condition precedent. We limit our discussion, however, to the parties' contract and the addenda to it.

[5] Paragraph eleven of the contract provides: "11. Inspections: a. The Seller promises to pay for any termite, well, or other inspections required by CHFA, VA, or FHA. b. The Seller promises to allow access to the premises for the purpose of any inspections requested by the Buyer. Such inspections other than those required in subsection a, shall be paid for by the Buyer and

obligated the plaintiffs to allow the defendant access to their property for the purpose of conducting whatever inspections he desired, all of which were to be paid for by him. The plaintiffs argue that this provision negates any inference that they were obligated to demonstrate that the matters subject to inspection were satisfactory. The plaintiffs also rely on paragraph thirteen of the contract, which indicates that the property would be delivered to the defendant in the condition it was in at the time of the contract, except for normal use and wear, and paragraph nineteen of the contract, which provides that the defendant had the opportunity to inspect the property and that the defendant entered into the agreement without relying on any representations, information or promises by the plaintiffs.

In this regard, we note that the water test addendum to the real estate contract provided that the contract was contingent on a water test to be performed at the defendant's expense.[6] When the first test was performed and the results were unsatisfactory, the defendant paid the cost in accordance with the contract. We agree with the trial court, however, in rejecting the plaintiffs' claim that the defendant was required to secure and furnish the satisfactory report. As the trial court correctly stated: "The contract does not contemplate that when the property fails the test the buyer shall be required to remedy the situation. Nor does it contemplate that the buyer shall be required time and again to pay for successive tests until the premises passes the test."

The plaintiffs further argue that the mortgage contingency and water test addendum provisions of the con-

governed by the terms of the Addenda attached to and made a part of this Contract."

[6] The addendum stated in part: "This contract is contingent upon a water test and report to be completed by a recognized water testing company at buyer's expense on or before 8/15/88." The parties subsequently entered into an addendum extending the date for the water test to September 23, 1988.

tract also specify what the defendant was to have done in the event that he could not obtain the mortgage financing or if he found some characteristic of the property objectionable within the terms of the addenda. The plaintiffs argue that, in such event, the defendant was to notify the plaintiffs and their broker, in writing, of his intent to terminate the contract.[7] Since the defendant did not do this, the plaintiffs argue that the defendant waived his right to terminate the contract.

We note, however, that "[a]n existing contract may be modified or abrogated by a new contract arising by implication from the conduct of the parties." *Malone* v. *Santora*, 135 Conn. 286, 292, 64 A.2d 51 (1949). The trial court found, and we agree, on the basis of the record before us, that the parties' modified these contract provisions by their actions.[8] We agree with the

[7] The mortgage contingency clause provided: "If Buyer cannot obtain a written commitment for the Mortgage . . . Buyer may terminate this Contract by providing Seller and Broker, not later than the Mortgage Commitment Date, with written notice of buyer's inability to obtain such commitment. If Buyer does not choose to terminate the Contract, this Contract will remain in full force and effect unless Seller, within seven (7) days from the Mortgage Commitment Date, gives written notice to Buyer and Broker that Seller has chosen to terminate this Contract as a result of Buyer's inability to obtain such commitment."

The water test addendum stated in part that "[i]f the applicable initialed provisions do not comply with minimum state standards, then Buyer shall have the option to terminate the Contract by giving Seller and Broker written notice within five (5) days of the above date in which case all sums paid on account of the purchase price shall be returned to Buyer. Failure of Buyer to give Seller and Broker this written notice shall be a waiver of this right to terminate and this Contract shall continue in full force and effect free from any such condition."

[8] The trial court found that "[a]fter the first test failed, Merrill Lynch arranged to have the successive test or tests performed and the report sent to the plaintiff. The defendant never received a copy of the report and was never asked by the seller to pay for the subsequent report. The defendant was informed by Elaine Driscoll, another staff member of the seller's agent, Merrill Lynch, that the defendant had no say in the subsequent test or tests and that the sellers would determine what method they chose to cure the problem, that their (seller's) obligation was to provide a water test that was satisfactory, and that they would do that.

court's conclusion that "after the failure of the first test, the parties both understood that if there was to be a closing it would be the obligation of the seller, not the buyer, to correct the problem, and pay for the test, and that if the test result was not produced at the closing, there would be no mortgage, no closing, and no sale."

On the basis of the subsidiary facts found by the court, we conclude that the ultimate finding of the trial court that the plaintiffs' failure to produce the water test constituted the failure of a condition precedent to the contract was not clearly erroneous.

II

The plaintiffs next argue that the trial court improperly permitted the introduction of evidence concerning agency when agency was not pleaded by the defendant. The plaintiffs further argue that, even if properly considered, the court improperly concluded that Merrill Lynch was acting as their agent for the purpose of procuring and delivering a water analysis to the defendant's mortgagee.[9] In this regard, we first note that the plaintiffs sued Merrill Lynch claiming that it was their agent and, as such, had breached its fiduciary duty. That is an

"The buyer was told, upon inquiry, that the subsequent test results showed compliance, that the water passed the test. The buyer asked for a copy of the test report a number of times. It was never produced, but they said they would have it or that they had it. Everyone knew that the water test report was necessary for the closing and for the mortgage loan. All that the buyer had to give to the bank was the water report which showed an unacceptably high manganese content.

"The water test report which was produced, after the closing had been terminated by the bank for failure of the production of the report, bears the date December 9, 1988, the day of the closing, and is addressed to the plaintiff, Mr. Miceli."

[9] The plaintiffs did file a motion for articulation requesting that the trial court articulate the factual basis for its conclusions concerning the existence of an agency relationship between the plaintiffs and Merrill Lynch. The motion for articulation was denied by the trial court. The plaintiffs then filed a motion for review with this court. By order dated November 9, 1994, we granted the motion but denied the requested relief.

evidential admission. *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 492 A.2d 164 (1985).

We further note, however, that, although the trial court on numerous occasions in the memorandum of decision referred to Merrill Lynch as the plaintiffs' agent, the court concluded by questioning whether Merrill Lynch was the agent for either the plaintiffs or the defendant.[10] In any event, regardless of whether Merrill Lynch was the plaintiffs' agent for the purpose of procuring the report, the trial court correctly found that the production of the report was a condition precedent to the contract; see part I of this opinion; and found that the plaintiffs' attorney had indicated at the closing that a satisfactory water test report had been obtained and would be delivered, but that the failure to produce the report at the closing was the cause for the closing's not going forward.

## III

Finally, the plaintiffs argue that the trial court improperly found that there was a delay on their part in addressing the water problem and that extensions of the closing date were granted so that the plaintiffs could close on their new residence. Specifically, the plaintiffs argue that the water was retested on or before September 23, 1988, the date set by the parties' extension addendum. The plaintiffs argue therefore that they did not delay in addressing the water problem. The plaintiffs

[10] Specifically, the court stated that "[Merrill Lynch] appears to be more that of an independent contractor, each of the parties looking to Merrill Lynch to produce the test report. . . . It appears clear from the start both parties relied upon Merrill Lynch Realty to arrange for the tests and to produce the test report. Merrill Lynch Realty assumed the precarious role of being the agent for both parties, in the matter of the testing and report and this calls into question whether it was the agent for either party. That duplicate role is totally antagonistic to the concept of agency and the singular role which accompanies the obligators of agency. It is not the parties who failed each other, but the third party, Merrill Lynch, who failed them both. The claims against Merrill Lynch have been settled."

additionally argue that there were no formal extensions of the closing date, and that, after they closed on their new residence on October 18, 1988, they tried to close the transaction on October 25, November 8, December 2 and December 9, 1988.[11]

We again note that the factual findings of the trial court will not be reversed on appeal unless they are clearly erroneous. See *Rosick* v. *Equipment Maintenance & Service, Inc.*, supra, 33 Conn. App. 40–41. We agree with the defendant, however, that the resolution of these issues is not relevant to the outcome of this case, which was based solely on the failure of the December 9, 1988 closing to take place. As stated previously, the trial court found that the plaintiffs' failure to produce the satisfactory water test report at the December 9, 1988 closing was the cause for the closing's not going forward.

The judgment is affirmed.

In this opinion, SPEAR, J., concurred.

SCHALLER, J., dissenting. The majority concludes that the trial court did not improperly find that the plaintiffs' failure to comply with a condition precedent to the contract caused the closing not to go forward. Because my review of the evidence leads me to conclude otherwise, I respectfully dissent. The evidence

---

[11] As part of this argument, the plaintiffs claim, citing *Kakalik* v. *Bernardo*, 184 Conn. 386, 392, 439 A.2d 1016 (1981), that since the parties' agreement did not specify that time was of the essence as to the date of conveyance, failure to convey at the precise time could not relieve the defendant of his contractual obligation to purchase. This theory was not pleaded in the complaint or argued to the trial court, nor was any evidence produced relating to it. Furthermore, this issue was not briefed. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Fromer* v. *Freedom of Information Commission*, 36 Conn. App. 155, 156, 649 A.2d 540 (1994).

plainly demonstrates that the plaintiffs met all of their obligations under the contract, even as those obligations were extended beyond the terms of the written contract by virtue of the implied condition precedent that the plaintiffs produce a satisfactory water test at the closing, which the trial court found to exist on the basis of what "the parties both understood."

Close scrutiny of the evidence reveals several additional facts, unlikely to be disputed, that cast a somewhat different light on the situation. After the parties mutually extended the date for completing the water test to September 23, 1988, the plaintiffs took remedial action, and by September 13, 1988, the water had tested satisfactorily for purposes of the contract. A report was produced reflecting this testing. The defendant apparently did not see that report and was not given a copy. The defendant, however, did *not* terminate the contract on September 23, 1988, because of a failure to comply with the water contingency clause. Instead, he agreed to further extensions of the closing date, including an extension until the final date of December 9, 1988.[1]

Shortly after the parties assembled for the December 9, 10 a.m. closing, Attorney Clement Pontillo, representing the bank, inquired whether the plaintiffs' attorney had the latest water report.[2] Attorney Edward Gasser, representing the plaintiffs, then spoke, not only with someone in his own office, but with a representative of the water testing company, to verify that a subsequent test had been performed and that the results were satisfactory. Moreover, Gasser handed the telephone to Pontillo so he could ascertain for himself from the water

---

[1] It is clear that because the defendant failed to exercise any right to terminate based on the financing contingency, no claim can be asserted in that regard.

[2] The evidence is plain that, by this time, everyone concerned with the matter was well aware that the plaintiffs had long since corrected the water situation.

testing company that the tests were satisfactory. Indeed, the water situation was fully remedied prior to September 23, 1988, a fact that apparently was well understood prior to the parties' assembling on December 9 for the closing.

Despite the general knowledge and specific assurances that the test results were satisfactory, and the tender of an executed deed by the plaintiffs' attorney, the closing attorney and the buyer's attorney declined to begin the process of closing on the transaction, preferring instead to await the arrival of the report, which was sure to reflect the successful water test. When asked why the defendant did not begin signing the mortgage documents, the defendant's wife replied: "I don't know. I don't think that is something that we would be in charge of; we were not asked to start doing anything."

In the meantime, while the parties waited, various issues pertaining to complaints about the square footage of the house as well as the appraised value were raised on behalf of the defendant. The defendant's attorney indicated that his client was looking for a reduction in the purchase price because the square footage was not as represented. The defendant's wife testified further that at 11:30 a.m., after one and one-half hours of waiting, rather than proceeding with the mechanics of closing, Pontillo stated that "he had other obligations; the bank could not do the closing at that time and nothing could go forward from that day, so everyone left." Everyone left, except Gasser, who remained to receive the water test report, delivered ten minutes later. The test report, of course, reflected the complete correction of the water problem. Before leaving the bank building, in which Pontillo maintained his office, Gasser left a copy of the report with Pontillo's secretary.

The trial court found "that after the failure of the first test, the parties both understood that if there was

to be a closing it would be the obligation of the seller, not the buyer, to correct the problem, and pay for the test, and that if the test result was not produced at the closing, there would be no mortgage, no closing, and no sale." The trial court later referred to the substance of that finding as a "condition" and found that because of the plaintiffs' failure (actually, according to the trial court, it was the real estate broker's failure) to produce an acceptable water report, "the mortgage contingency failed and the contract contingency failed." Although the majority correctly points out that we are concerned only with the water contingency provision, not the mortgage contingency, the two are linked incorrectly in the trial court decision and, in my view, the plaintiffs are charged improperly with the defendant's obligation to furnish a test report to qualify for financing.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 41, 632 A.2d 1134 (1993). Of course, we should not hesitate to act when a clearly erroneous finding is discovered. See, e.g., *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 541, 661 A.2d 530 (1995); *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 638, 646 A.2d 772 (1994); *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 458, 612 A.2d 1217 (1992); *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 545, 651 A.2d 1302 (1995); *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 440, 651 A.2d 281 (1994). I am convinced that clear error has occurred here that has resulted in a substantial injustice to the plaintiffs. See *Jackson* v.

*Jackson,* 2 Conn. App. 179, 196, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984).

As the majority stated, " '[a] condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . If the condition precedent is not fulfilled the contract is not enforceable.' (Citations omitted; internal quotation marks omitted.) *Luttinger* v. *Rosen,* 164 Conn. 45, 47–48, 316 A.2d 757 (1972) . . . ." That statement of law does not, however, go quite far enough in this situation. Our Supreme Court has held, significantly, that "[i]n the absence of a specified time limit to comply with a condition precedent, the law implies a reasonable time. . . . What is a reasonable length of time is ordinarily a question of fact for the trier." (Citations omitted; internal quotation marks omitted.) *Christopher* v. *Blount,* 216 Conn. 509, 513, 582 A.2d 460 (1990). *Christopher* is particularly applicable to this case.

I assume, arguendo, that the trial court's finding of the implied contract modification was not clearly erroneous, even though to do so requires overlooking several inherent inconsistencies. I cannot agree, however, with the court's finding that the plaintiffs' failure to satisfy that condition caused the closing to fail. A review of the entire evidence leads me to a definite and firm conviction that a mistake has been committed. See *Rosick* v. *Equipment Maintenance & Service, Inc.,* supra, 33 Conn. App. 41. Soon after the parties had assembled for the closing, if not well before, it was apparent that the plaintiffs had long since satisfied the water condition, that a report to that effect had been prepared and that the report would be delivered to the closing. In the face of that information, the bank's attorney, for some unexplained reason, still refused to process the closing documents and, instead, elected to wait for the report. Then, at 11:30 a.m., he summarily decided that, given his schedule for the day, there would be insuffi-

cient time for the closing when the report arrived. Within ten minutes after he, the defendant and his attorney departed, the report arrived, as expected, indicating full compliance by the plaintiffs.

The plaintiffs' tender of the executed deed was rejected despite the fact that they had satisfied, under any reasonable interpretation, the vital part of the contractual water contingency, even under the "modified" contract. The plaintiffs not only had satisfied the water condition well before the closing, but also produced a report evidencing compliance within a reasonable time—in ample time for the closing to be held that day. While it is unfortunate that the report was not brought to the closing earlier, under the applicable law, the plaintiffs were entitled to have the closing proceed or to be compensated for their damage. Although the trial court, ultimately, did not conclude that the real reason for the failure of the closing was the defendant's dissatisfaction with the square footage and appraised value of the premises, despite the substantial evidence to that effect, that evidence may help to explain why the closing ended so abruptly.

Because the entire evidence indicates unmistakably that the plaintiffs satisfied their obligations under the contract, I would reverse and remand with direction to render judgment in favor of the plaintiffs.

For the foregoing reasons, I respectfully dissent.