## DAVID MURPHY *v.* CHARLES A. BUONATO, JR., ET AL.
### (14053)

O'Connell, Landau and Healey, Js.

Argued February 28—officially released July 23, 1996

*David G. Hill,* for the appellant (defendant).

*James A. Mulhall, Jr.,* with whom was *Kevin T. Nixon, Sr.,* for the appellee (plaintiff).

LANDAU, J. The plaintiff brought this action pursuant to General Statutes § 22-357[1] to recover damages for

---

[1] General Statutes § 22-357 states in pertinent part: "If any dog does any damage to either the body or property of any person, the owner or *keeper,* or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. . . ." (Emphasis added.)

personal injuries alleged to have been caused by the defendant's[2] dog while it was in the plaintiff's care and custody. After a bench trial, the trial court rendered a judgment for the plaintiff and the defendant appealed.

On appeal, the defendant claims that the trial court improperly determined that the plaintiff was not a "keeper" of a dog within the meaning of § 22-357. The defendant further claims that keepers of dogs cannot recover under the statute because keepers do not fall within the class of persons that the legislature intended to protect under the strict liability provisions of § 22-357.

The following facts are relevant to the resolution of this appeal. The plaintiff and the defendant were friends. The defendant is the owner of a Chow dog. In October, 1992, the parties agreed that the plaintiff would care for the defendant's dog at the plaintiff's home while the defendant was out of town for approximately one week. The defendant delivered his dog to the plaintiff's residence on October 21, 1992.

The next morning, before leaving for work, the plaintiff took the dog for a walk and then placed it inside the house where it remained for the day. At 5 p.m., the plaintiff returned home from work, took the dog outside and tied it to a tree in the yard. Several hours later, the plaintiff walked the dog toward the house intending to bring it in for the night. The plaintiff untied the dog and took hold of its collar to prevent the dog from running away. Upon reaching the rear porch, the plaintiff attempted to open the door using his right hand while maintaining his grip on the dog's collar with his

---

[2] Although the plaintiff's complaint originally named as defendants Charles A. Buonato, Jr., Charles A. Buonato, Sr., and Kim Fiore, the case was withdrawn as to Buonato, Sr., on December 2, 1993, and as to Fiore on April 6, 1994. In this opinion, therefore, we refer to Charles A. Buonato, Jr., as the defendant.

left hand. The dog suddenly bit the plaintiff's left hand causing several puncture wounds. Later that evening, the plaintiff went to a hospital where he received emergency medical treatment.

The plaintiff sought to recover damages from the defendant pursuant to § 22-357.[3] After a trial to the court, the defendant's motion for a directed verdict was denied, and the court rendered judgment in favor of the plaintiff, awarding him damages of $33,113.62.[4] Responding to the defendant's postjudgment motion to articulate whether it found that the plaintiff was a keeper, the trial court opined that, although the plaintiff had "possession" of the dog at the time he was bitten, he "was not a keeper of the subject dog, for the purposes of General Statutes § 22-357, at the time of the incident."

I

We begin our analysis with a determination of whether the trial court properly concluded that the plaintiff was not a keeper at the time he was injured. The defendant argues that the plaintiff meets the definition of a keeper because he not only harbored and possessed the defendant's dog, but also exercised the requisite dominion and control over it. The plaintiff argues that the trial court's finding was proper because, although the plaintiff assumed possession of and agreed to care for the defendant's dog, he merely exercised temporary and transient contact with it and, thus, did not exercise the necessary amount of control required by law to meet the statutory definition of a keeper. We agree with the defendant.

[3] The plaintiff, in a single count complaint, claimed statutory liability pursuant to § 22-357.

[4] On November 7, 1994, the trial court granted the plaintiff's motion to open the judgment and have prejudgment interest added to his damage award pursuant to General Statutes § 52-192a. The court added interest of $6250.86, for a total damage award of $39,364.48, and rendered judgment accordingly.

Because the determination of whether the plaintiff was a keeper is a question of fact; *Falby* v. *Zarembski*, 221 Conn. 14, 18, 602 A.2d 1 (1992); it is useful to state the proper standard of appellate review. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153–54, 527 A.2d 679 (1987)." (Internal quotation marks omitted.) *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 541, 661 A.2d 530 (1995).

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 41, 632 A.2d 1134 (1993).

It cannot be overlooked that the trial court's factual conclusion that the plaintiff was not a keeper for the

purposes of § 22-357 is based on the subordinate facts it found. "Conclusions drawn from those underlying facts must be legal and logical. *State* v. *Lasher*, 190 Conn. 259, 267, 469 A.2d 970 (1983). An appellate court reviews conclusions based on subordinate facts found, even if labeled conclusions of fact, to the same extent that it reviews conclusions of law. *Hadfield* v. *Tracy*, 101 Conn. 118, 125, 125 A. 199 (1924)." *State* v. *Geisler*, 222 Conn. 672, 693, 610 A.2d 1225 (1992). Accordingly, we may and do determine whether, on the subordinate facts found, the trial court legally and logically concluded that the plaintiff was not a keeper for purposes of § 22-357.

"Of course, we should not hesitate to act when a clearly erroneous finding is discovered. See, e.g., *Barbara Weisman, Trustee* v. *Kaspar*, [supra, 233 Conn. 549]; *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 638, 646 A.2d 772 (1994); *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 458, 612 A.2d 1217 (1992); *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 545, 651 A.2d 1302 (1995); *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 440, 651 A.2d 281 (1994)." *Miceli* v. *Helyer*, 40 Conn. App. 336, 349, 671 A.2d 826 (1996) (*Schaller, J.*, dissenting).

Pursuant to General Statutes § 22-357, "[a] 'keeper' is defined as 'any person, other than the owner, harboring or having in his possession any dog.' General Statutes § 22-327 [(6)]. To harbor a dog is to afford lodging, shelter or refuge to it. *Malone* v. *Steinberg*, 138 Conn. 718, 722, 89 A.2d 213 (1952); Webster's Third New International Dictionary. '[P]ossession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog] . . . .' *Hancock* v. *Finch*, 126 Conn. 121, 123, 9 A.2d 811 (1939)." *Falby* v. *Zarembski*, supra, 221 Conn. 19. "One who treats a dog as living at his house and undertakes to control his actions is [a]

. . . keeper." *McCarthy* v. *Daunis*, 117 Conn. 307, 309, 167 A.2d 918 (1933). In order to harbor or possess a dog, some degree of control must be exercised. *Buturla* v. *St. Onge*, 9 Conn. App. 495, 519 A.2d 1235 (1987).[5]

Applying these principles to the facts of this case, we conclude that the plaintiff meets the definition of a keeper within the meaning of § 22-357. The subordinate facts found by the trial court established that in early October, 1992, the defendant informed the plaintiff that he had to travel to Oklahoma for approximately one week to give a deposition and asked the plaintiff to care for his dog while he was away. The plaintiff apprised the defendant that he would be willing to care for the dog unless his roommate objected. Thereafter, with his roommate's acquiescence, the plaintiff informed the defendant that he would care for the dog.

On the evening before his departure, the defendant delivered the dog to the plaintiff, at the plaintiff's residence, and provided the plaintiff with dog food and a chain to secure the dog in the plaintiff's yard. The defendant instructed the plaintiff not to allow the dog to roam. The plaintiff took possession of the dog upon its delivery and, in doing so, assumed sole responsibility to feed and water it, to provide shelter for it, and to walk it. Furthermore, on the day he was bitten, it was the plaintiff who had tied the dog to a tree, later untied it and took hold of its collar to prevent the dog from running away. In short, the subordinate facts found by the trial court established that the plaintiff not only harbored the dog by affording it lodging and shelter, but also exercised exclusive dominion and control over it.

[5] In the reported cases, the following types of evidence have been held significant in determining whether an individual kept or harbored a dog: who fed the dog; see *Lanna* v. *Konen*, 119 Conn. 646, 178 A. 425 (1935); who tied and untied the dog; see id.; at whose call the dog would come; see id.; who paid for the dog's license; see *Davidson* v. *Manning*, 168 Ky. 288, 181 S.W. 1111 (1916); and who controlled the premises where the dog was kept; see *Bailey* v. *Desanti*, 36 Conn. Sup. 156, 414 A.2d 1187 (1980).

Nevertheless, the trial court, in its response to the defendant's motion for articulation, found that the plaintiff "was merely watching the [defendant's] dog for a short period of time while the defendant was away" and that the plaintiff's "possession of the dog was subject to the specific directions for its care and feeding" as provided by the defendant. In finding that the plaintiff was not a keeper, the court stated that "it cannot be said that the plaintiff's temporary custody rose to the level of the 'exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession.' " In support of its decision, the trial court relied on *Hancock* v. *Finch*, supra, 126 Conn. 121. We conclude, however, that, because the facts of this case are substantially dissimilar from those of *Hancock*, the trial court's reliance on *Hancock* is misplaced.

In *Hancock*, the plaintiff's role amounted to brief visits to the defendant's home to feed and water the defendant's dogs while the defendant was out of town for five days. Id., 122. The dogs were kept in a kennel on the defendant's property, and the plaintiff was specifically instructed by the defendant not to let them out. Id. On the second day, the plaintiff and his wife were attacked and injured by the dogs after the plaintiff released the dogs from the kennel. Id. The plaintiff's complaint sought damages for the injuries caused by the defendant's dogs, to which the defendant pleaded a special defense that the plaintiff was the keeper of the dogs. Id., 121–22. In holding that the trial court properly refused to submit to the jury the question of whether the plaintiff was a keeper, our Supreme Court reasoned that the plaintiff neither afforded the dogs lodging, shelter or refuge, nor did he exercise dominion and control over them similar to that of the owner. Id., 123.[6]

---

[6] See also E. Y. O'Connell, "Animals—Statutory Liability of a Dog's Keeper—Who is a Keeper of a Dog? *Malone* v. *Steinberg*, 138 Conn. 718, 89 A.2d 213 (1952)." 26 Conn. B.J. 417 (1952).

In this case, the plaintiff exercised a far greater degree of care and control over the defendant's dog than that exercised in *Hancock*. Unlike the plaintiff in *Hancock*, the plaintiff in this case had sole possession of the defendant's dog, allowed it to live at his own residence, provided it with shelter and lodging, accepted full responsibility for its care and *controlled each of the dog's actions from the moment the defendant delivered it until the moment the plaintiff was bitten.* Indeed, under the facts of this case, it is difficult to contemplate a scenario in which the plaintiff could have exerted a greater degree of care and control over the defendant's dog. Applying the principles of *Hancock*, we conclude, therefore, that this case is not a case of "temporary custody" as characterized by the trial court.

The plaintiff attempts to buttress his argument that he was not a keeper by asserting that his injuries occurred less than twenty-four hours after the defendant delivered the dog into his possession and that he was either asleep or at work for most of that time. We remain unpersuaded. As we have already stated, the determination of whether a person is a keeper turns on whether, and to what extent, a person in possession of a dog exercises dominion and control over it. *Falby* v. *Zarembski*, supra, 221 Conn. 19; *Buturla* v. *St. Onge*, supra, 9 Conn. App. 495. Under the facts of this case, because there is no question that he exercised a sufficient degree of dominion and control over the defendant's dog, we hold that the plaintiff met the definition of a keeper within the meaning of § 22-357. Accordingly, the trial court's finding that the plaintiff was not a keeper was clearly erroneous.

II

Because we conclude that the trial court's subordinate findings established that the plaintiff was a keeper within the meaning of § 22-357, we next must determine

whether he is precluded, under that legal status, from recovering damages from the defendant owner of the dog.

The defendant claims that, as a keeper, the plaintiff is precluded from asserting a statutory claim because § 22-357 is intended solely to provide a remedy to third parties, who are not in a position to control the dog, against either a dog's owner or keeper. He argues that, because the statute imposes strict liability against the owner or keeper of a dog, any person who owns or keeps a dog does so at his peril. The defendant asserts that the plaintiff's only recourse would be to file an action sounding in negligence, which he failed to do.[7]

In contrast, the plaintiff claims that his status as a keeper should not preclude him from recovering from the defendant under the statute. He argues that the plain language of § 22-357 indicates that the legislature intended to provide a remedy not only to third persons, but to "any person" injured by a dog. The plaintiff contends that a keeper unambiguously falls within the meaning of "any person" and should not, therefore, be precluded from recovering against the defendant as the owner of the dog. He asserts that, in order to recover under the statute, he need establish only that he was injured by a dog, that he was not committing a tort or teasing or tormenting the dog, and that the defendant owned the dog. We are unpersuaded by this argument.

After reviewing the language of § 22-357, we conclude that the statute does not unambiguously include the keeper of a dog within the class of persons afforded a remedy. Although the statute allows the recovery by "any person," it does so only *against* a dog's owner or keeper. Thus, because we are unable to obtain guidance from the wording as to whether the legislature intended to include the keeper of a dog within the class of persons

---

[7] See footnote 3.

afforded a remedy under the statute, we must interpret the statute.

Our interpretation of § 22-357 "is guided by the well established principles of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . If a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to bizarre results destructive of that purpose, the former should prevail." (Citations ommitted; internal quotatopn marks ommitted.) *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996). "In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995).

The legislative purpose of our dog bite statute was summarized by this court in *Maccarone* v. *Hawley*, 7 Conn. App. 19, 507 A.2d 506 (1986), in which we stated that § 22-357 was enacted to create "strict liability in the owner or keeper to *third parties* for injuries caused by a dog. Its purpose to 'abrogate the common-law doctrine of *scienter* as applied to damage by dogs to persons and property, so that liability of the owner or keeper [does not depend] upon his knowledge of the dog's ferocity or mischievous propensity . . . .' *Grannis* v. *Weber*, 107 Conn. 622, 625, 141 A. 877 (1928). It is an example of the common law principle that, as

between two innocent persons, namely the injured *third party* and the owner or keeper, the loss should fall on the one who caused it, rather than on the one who had no part in doing so. Id." (Emphasis added.) *Maccarone* v. *Hawley*, supra, 24–25.

In *Schonwald* v. *Tapp*, 142 Conn. 719, 722, 118 A.2d 302 (1955), our Supreme Court stated that "[t]he statute[8] creates a cause of action that did not exist at common law." Thus, "when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction. . . . The court is to go no faster and no further than the legislature has gone. . . . A legislative intention not expressed in some appropriate manner has no legal existence." (Citation omitted; internal quotation marks omitted.) *Edmundson* v. *Rivera*, 169 Conn. 630, 633, 363 A.2d 1031 (1975).

Because § 22-357 expressly identifies owners and keepers in the class of persons who are liable under the statute, and because an owner or keeper is defined as a person who harbors or possesses and exerts control over a dog, we conclude that the statute was intended by the legislature "to protect only those people who are not in a position to control the dog." *Khamis* v. *Everson*, 88 Ohio App. 3d 220, 221, 623 N.E.2d 683 (1993). In *Khamis*, the Ohio Court of Appeals addressed the precise issue before us when it interpreted Ohio's strict liability dog bite statute. The statute, which is nearly identical to ours, provides in pertinent part: "The owner, keeper, or harborer of a dog is liable in damages for any injury . . . to person or property that is caused by the dog. . . ." Ohio Rev. Code Ann. § 955.28 (B).

---

[8] At the time of the *Schonwald* decision, § 22-357 was General Statutes (Cum. Sup. 1953) § 1400c and was identical in pertinent part to the current version.

In *Khamis*, the keeper of a dog brought suit against the dog's owner when the keeper sustained an injury from a dog bite. The court held that a keeper cannot sue an owner under the statute. *Khamis* v. *Everson*, supra, 880 Ohio App. 3d 225. In reaching its conclusion, the court reasoned that, because the statute was in derogation of the common law, it was to be construed strictly in order to give force and effect to the legislative intent. Id., 224. We find *Khamis* persuasive.

Thus, when the language "any person," as used to describe the class of persons afforded a remedy under the statute, is read in context with the entire text of § 22-357 and in light of the statute's purpose, we conclude that, to effectuate the legislative intent of the statute, the only rational interpretation of the phrase "any person" is that it describes a class of *third persons* separate and apart from owners and keepers who, by definition, are the class of persons that exercise dominion and control over a dog. See *Caldor* v. *Heffernan*, 183 Conn. 566, 570, 440 A.2d 767 (1981).

To adopt the interpretation of the statute urged on us by the plaintiff would lead to bizarre results insofar as the statute would then allow suits not only between keepers and owners, but also between owners and coowners.

Because we believe that the clear meaning of § 22-357 is that either the owner or keeper of a dog shall be strictly liable for injuries caused by that dog solely to third parties; see *Khamis* v. *Everson*, supra, 88 Ohio App. 3d 221; we hold that a keeper of a dog is not within the class of persons that the legislature intended to protect by enacting § 22-357. Section 22-357 is "drastic, and its purport is that a person who owns a dog does so at his peril. The same is true as to a keeper, so long

as he remains a keeper." *Ingeneri* v. *Kluza*, 129 Conn. 208, 210, 27 A.2d 124 (1942).[9]

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion HEALEY, J., concurred.

O'CONNELL, J., dissenting. I cannot agree with the majority for two reasons. First, the trial court made a factual finding that the defendant was not a keeper of the dog for the purposes of General Statutes § 22-357. This finding must stand unless it is legally and logically inconsistent with the evidence. *State* v. *Oquendo*, 223 Conn. 635, 645, 613 A.2d 1300 (1992). We may not reject a factual finding merely because the reviewing judges personally disagree with the trial court's conclusion or would have found differently had they been sitting as the fact finder. *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982).

The fact-finding function is vested in the trial court because of its unique opportunity to view the evidence and to observe the witnesses. Id. The majority agrees that whether the plaintiff was a keeper is a question of fact. "Only in the clearest of circumstances, where no other conclusion could reasonably be reached, is the trier's determination of fact to be disturbed." *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 9, 437 A.2d 822 (1980). In response to a motion for articulation, the trial court compared the present case to *Hancock* v. *Finch*, 126 Conn. 121, 122, 9 A.2d 811 (1939), which distinguished "temporary custody" from "possession" of a dog. The trial court articulated in part as follows: "After hearing the evidence in the present case, the court finds that although the plaintiff did have possession of the dog in the narrowest, physical sense of the

---

[9] At the time of the *Ingeneri* decision, § 22-357 was General Statutes (Cum. Sup. 1935) § 1380c and was identical in pertinent part to the current version.

word, for the purposes of General Statutes § 22-357, it cannot be said that the plaintiff's temporary custody rose to the level of the 'exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession.' Id., 121]. As in *Hancock*, the plaintiff was merely watching the dog for a short period of time while the defendant was away, and the plaintiff's possession of the dog was subject to the specific directions for its care and feeding given to the plaintiff by the defendant before he left. . . . Accordingly, the court finds that the plaintiff was not a keeper of the subject dog, for the purposes of General Statutes § 22-357, at the time of the incident."

Our function is not to determine if the trial court could have reached a conclusion other than the one reached but instead whether the court could reasonably have reached the conclusion that it did. See *Allen* v. *Nissley*, 184 Conn. 539, 542, 440 A.2d 231 (1981). We must not substitute our own interpretation of the evidence on the cold record for that of the trial court on a live record. *Sportsmen's Boating Corp.* v. *Hensley*, 192 Conn. 747, 751, 474 A.2d 780 (1984). In my opinion, there was a basis in the evidence to support the trial court's finding that the plaintiff had temporary custody, and not possession, of the dog. For this reason, I feel that we are bound by the trial court's finding.

My second reason for dissenting is that even if the plaintiff was a keeper, I can find no authority for precluding him from recovery under § 22-357. The express language of the statute provides that a dog's owner shall be liable for any damage done by his dog. The statute does not exempt keepers from recovery from an owner for injuries caused by his dog. To qualify for damages the injured party must prove only that (1) damage was done to him by a dog, (2) at the time of such damage he was not committing a trespass or other tort and was not teasing, tormenting or abusing the

dog, and (3) that the defendant owned the dog. The majority opinion adds a forth requirement—that he was not the dog's keeper.

It is not the function of courts to read into clearly expressed legislation provisions that do not find expression in its words. *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 537, 469 A.2d 382 (1983). We should not extend the statute by adding an exclusion not within the clear language of the legislation. *Durrschmitt* v. *Loux*, 230 Conn. 100, 104, 644 A.2d 343 (1994).

If the plaintiff cannot recover under the dog bite statute, he may be barred from all recovery for his injuries. A common law negligence action may not be a substitute. Even a dog's owner is not liable to persons injured by the dog unless (1) the dog had vicious propensities (2) of which the owner was aware and (3) the owner failed to exercise reasonable care in restraining the dog. There is no indication in the present case that the plaintiff had such knowledge, i.e., scienter, of the dangerous propensities of the defendant's dog.

Statutes such as § 22-357, which are in derogation of the common law, must be strictly construed. *Yale University School of Medicine* v. *Collier*, 206 Conn. 31, 37, 536 A.2d 588 (1988). The intent of our dog bite statute is to eliminate the common law scienter requirement and to impose strict liability on dog owners for damage done by their dogs. D. Wright, Connecticut Law of Torts (3d Ed. 1991) § 126. Strictly construing this statute, liability of owners is expanded, not limited. The statute should therefore not be used as a shield to protect owners from liability for damage done by their dogs.

I would affirm the decision of the trial court.