[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT # 120 123
On September 15, 1993, the plaintiff, Sarah Dilion, filed a one-count complaint alleging that sometime prior to July 19, 1991, the defendants, Moira Burke and Joan Drury, brought two chow chow dogs (one red, one black) to the West Hartford Animal Hospital (Hospital). The defendants claim that they brought the dogs to the hospital on July 8, 1991. (Affidavit of Drury paragraph 5; Affidavit of Burke paragraph 8.) Dilion, an employee of the Hospital, further alleges that, on July 19, 1991, the red dog bit Dilion on her left forearm. Dilion seeks recovery under General Statutes § 22-357, which allows recovery against a CT Page 187-J dog's owner or keeper for damage to person or property caused by the dog.
In their answers to Dilion's complaint, both defendants denied that they were the dogs' owners and/or keepers. The defendants claimed that they had found the dogs on Interstate 91 Northbound. (See Affidavit of Drury paragraph 3; see Affidavit of Burke paragraph 3.)
On June 7, 1996, defendant Burke filed a motion for summary judgment along with a supporting memorandum of law and portions of deposition testimony of Flickinger, a veterinarian at the Hospital, Burke and Dilion. Defendant Burke based the motion on the grounds that (1) she was not the owner or keeper of the dog, and (2) as an employee of the animal hospital, Dilion had assumed the risk of being bitten while she was treating the dog.[1]
On July 2, 1996, defendant Drury filed a motion for summary judgment along with a supporting memorandum of law, an affidavit and certified copies of deposition testimony of Flickinger, Dilion and Burke. Drury based her motion on the same grounds as Burke.
On July 31, 1996, Dilion filed an objection to the defendants' motions for summary judgment along with supporting CT Page 187-K memorandum of law and certified copies of deposition testimony of Burke and Flickinger. In her opposition, Dilion argues that the case contains an issue of fact regarding whether the defendants were the owners and/or keepers of the dog. Dilion further argues that Burke's motion for summary judgment is insufficient because it relies on uncertified deposition transcripts only.
On October 15, 1996, Burke filed supplemental materials in support of her motion for summary judgment including excerpts of certified deposition transcripts and an affidavit.
Additionally, on October 15, 1996, Drury filed a copy of the recent Appellate Court case of Murphy v. Buonato,42 Conn. App. 239, 679 A.2d 411 (1996), and a supplemental memorandum of law. In response, on October 17, 1996, Dilion filed a reply memorandum of law addressing the Murphy
decision.
Summary judgment is appropriate where the pleadings, affidavits, and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384. A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citation omitted.) Wilson v. New Haven,
CT Page 187-L213 Conn. 277, 279, 567 A.2d 829 (1989). "The function of the trial court, in summary judgment proceedings, is not to decide issues of material fact but rather to determine whether any such issues exist." (Citation omitted.) Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). In summary judgment proceedings, the moving party must show the absence of any genuine issues of material fact, and, in making its determination, the court must consider the affidavits, documents and pleadings in the light most favorable to the nonmoving party.Mingachos v. CBS, Inc., 196 Conn. 91, 111, 491 A.2d 368
(1985).
The defendants argue that, at the time the dog allegedly bit Dilion, they were neither the owners nor the keepers of the dog; rather, the hospital was the dog's keeper. Defendants also argue that, as an employee of the hospital, Dilion was also the dog's keeper and, thus, is barred from recovering under General Statutes § 22-357. Dilion counters that, even when the dogs were in the hospital's possession, the defendants had exercised sufficient control over the dog to qualify them as the dog's keepers. Dilion also argues that, even if her employer was the dog's keeper, it does not necessarily follow that Dilion is also the dog's keeper.
General Statutes § 22-327 (6) defines a keeper as "any CT Page 187-M person, other than the owner, harboring or having in his possession any dog." To possess a dog is to exercise dominion and control similar to that which ordinarily would be exerted by the owner in possession. Hancock v. Finch, 126 Conn. 121,123, 9 A.2d 811 (1939); Murphy v. Buonato, supra,42 Conn. App. 239, 243-44; Buturla v. St. Onge,9 Conn. App. 495, 519 A.2d 1235, cert. denied, 203 Conn. 803,522 A.2d 293 (1987). To harbor a dog is to afford shelter or lodging to it. Falby v. Zarembski, 221 Conn. 14, 19, 602 A.2d 1
(1992); Malone v. Steinberg, 138 Conn. 718, 722,89 A.2d 213 (1952). Additionally, under Murphy, to qualify as a keeper, a person harboring a dog must also exercise dominion and control over it. Murphy v. Buonato, supra,42 Conn. App. 239, 243-44; McCarthy v. Daunis, 117 Conn. 307,309, 167 A.2d 918 (1933) ("One who treats a dog as living at his house and undertakes to control his actions is [a] . . . keeper."). Temporary and transient control, however, are not sufficient to make one a keeper. Hancock v. Finch,126 Conn. 121, 122-23, 9 A.2d 811 (1939) (finding that person who made brief visits to defendant's home to feed and water the defendant's dog while he was away for five days was not a keeper).
The defendants maintain that they were not the dogs' owners, and the defendants' supporting documents establish that they were CT Page 187-N not the dogs' owners. (See Affidavit of Burke paragraph 11; see Deposition of Drury pp. 6-9; see Deposition of Dr. Flickinger pp. 20, 27.) The supporting documents establish that the defendants found the dogs on Interstate 91 Northbound and left them at the Hospital on or about July 8, 1991, while they searched for the dogs owners. (See Deposition of Burke pp. 6-9; see Affidavit of Burke paragraphs 3, 5; see Affidavit of Drury paragraphs 3, 5.) In fact, the defendants placed advertisements in a local newspaper seeking the dogs' owner. (Id., 29-31.) Even viewing these documents in the light most favorable to the plaintiff, seeMingachos v. CBS, Inc., supra, 196 Conn. 111, there is no genuine issue of material fact regarding whether the defendants were the dogs' owners.
Moreover, the defendants have shown, in their supporting documents, that they were not the dogs' keepers when the dog allegedly bit Dilion. In his deposition, Dr. Flickinger testifies that he agreed to keep the dogs at the hospital during the weekdays and Mrs. Burke agreed to keep the dogs at her home over the weekends until the defendants found the dogs' owner. (Flickinger's Deposition p. 18.) However, later in his deposition, Dr. Flickinger testified that the defendants did not take custody of the dogs over the weekends until after the red dog allegedly bit Dilion. (See Deposition of Flickinger p. 30.)[2] The first paragraph of Dilion's complaint alleges that CT Page 187-O the dog bit her at the hospital on July 19, 1991 (a Friday). Pursuant to the above agreement, the hospital was the dogs' keeper during the weekdays and defendant Burke was the dogs' keeper over the weekends after he red dog allegedly bit Dilion. Additionally, the affidavit of defendant Burke states that "[a]t no point in time from July 8, 1991 to July 19, 1991 did I have any control over the dogs." (Affidavit of defendant Burke paragraph 10.) Accordingly, when the dog bit Dilion, the hospital was the dog's keeper and the defendants were not.
Dillion argues that, even though the dogs were in the hospital's custody, the defendants maintained control over the dogs. SeeHancock v. Finch, supra, 126 Conn. 123. In support of this argument, Dilion submitted documents showing that (1) the defendants paid the hospital to board the dog; (see Burke's deposition p. 17, pp. 19-20; Flickinger's deposition pp. 34-35), and (2) the defendants paid the hospital to vaccinate and medicate the dogs while they were in the hospital's custody. (See Burke's deposition pp. 13-14.) However, in his deposition Dr. Flickinger admitted that, while the dogs were in his care, the defendants came in a few times only to walk the dogs. (See Deposition of Flickinger p. 21.)[3] Even considering the facts in the light most favorable to the nonmoving party, seeMingachos v. CBS, Inc., supra, 196 Conn. 111, these acts by the defendants did not make them the dogs' keepers when CT Page 187-P the red dog allegedly bit Dilion. See Hancock v. Finch, supra,126 Conn. 122-23 (holding that temporary and transient control over the dog is not sufficient to make one the dog's keeper).
Because the defendants have shown that they were not the dog's owners or keepers when it allegedly bit Dilion, the court need not address the issue of whether Dilion, as an employee of the hospital, was also the dog's keeper, which would bar her from recovering under General Statutes § 22-357. See Murphyv. Buonato, supra, 42 Conn. App. 239 (holding that a keeper of a dog is not within the class of persons that the legislature intended to protect in enacting General Statutes § 22-357).
Therefore, we conclude this case presents no genuine issues of material fact. Accordingly, the motions for summary judgment are granted.
Hennessey, J.