[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Patricia A. Cofrancesco brings this action against the defendants as; a result of their dog attacking her. The defendants Steven Biasi and Desiree Biasi are married to each other and live on the second floor of 9-11 Clifford Terrace, New Haven, Connecticut. The defendant Nicholas Biasi Jr. is the father of the defendant Steven Biasi and lives on the first floor of 9-11 Clifford Terrace, New Haven, Connecticut. The plaintiff instituted this action by a complaint dated March 20, 1995. The defendants filed their answer to said complaint on June 27 1995. CT Page 3560
The plaintiff testified that she was walking her dog, a Golden Retriever, and her mother's dog, a mixed terrier, on January 3, 1995 at about 7:00 P.M. in the area of the intersection of Oceanview Street and Clifford Terrace in the City of New Haven. The plaintiff testified that she had dinner at her parent's home that night on Oceanview Street. After dinner she took the two aforementioned dogs who were on leashes for a walk. The plaintiff's parents and the defendants live about one block from each other. At the aforesaid intersection the plaintiff testified she saw two dogs running around unleashed. She testified that she recognized the two dogs as being owned by the defendants. The plaintiff testified she was about twenty-five to thirty feet from the dogs when she first saw them. She testified she turned to get away and the large dog jumped her and knocked her to the ground while the smaller dog was going after her Golden Retriever. The plaintiff testified she thought the larger dog was going to attack her and she was in great fear for her safety. At the time the large dog was biting the mixed terrier. The plaintiff stated she was screaming for help. She stated there was a gentleman in the door of a nearby house watching this attack and he did nothing. The plaintiff stated a Raul Lafitte, a neighbor, came to her assistance and with a broom handle and his fists drove off the two dogs of the defendant's. She stated the defendant Steven; Biasi and his son came and took the dogs away that attacked the plaintiff and her Golden Retriever. She said Mr. Biasi said "I'm sorry the dog got out." The plaintiff testified that Mr. Lafitte walked her home with her dogs. Later that night the plaintiff testified that she took her dog to the veterinarian for treatment for injuries he received in the attack. She testified that as a result of said attack she expended the sum of $364.55 for medical treatment for said Golden Retriever (Exhibit A). She also testified that her sister took the mixed terrier to the veterinarian that night for treatment of its injuries. The plaintiff stated that she called the police that night about the incident. After that she testified that she and her sister walked to the defendant's home. There was evidence that words were exchanged between the plaintiff and her sister and Steven Biasi and his young son Joey. At no time during or prior to this attack was the plaintiff teasing, tormenting or otherwise abusing the attacking dogs nor was she trespassing on the premises where the dogs were kept.
Raul Lafitte testified that on January 3, 1995 he was home watching television when he heard a woman scream, "Help me, help CT Page 3561 me." He stated he went to the window and saw the plaintiff being attacked by dogs. He testified he grabbed a broom and went outside. He stated the plaintiff was on the ground screaming and one dog was chewing on her leg and the other dog was chewing on a small dog. Mr. Lafitte testified he hit the dog attacking the plaintiff with a broom handle and he also hit it with his fist. He stated he finally chased the dogs off after about thirty-five to fifty seconds. He said the defendant Steven Biasi came out with a small boy and as he walked by said "I'm sorry." Mr. Lafitte said he saw a neighbor in the doorway watching as he tried to get the dog off of the plaintiff. He later saw Steven Biasi talking to that neighbor. Mr. Lafitte said he helped the plaintiff get up and she was upset, hurt and physically shaken. He stated that when he came out of his house the plaintiff was in the street near the curb and that her dogs were on leashes.
Steven Biasi testified that he and his wife were the owners of the dogs involved in this incident. The bigger dog was called Duchess and was a Shepherd-Labrador mix. The smaller dog was her puppy and was called "Rommel." The younger dog was almost blind and was subsequently put to sleep. He stated on January 3, 1995 he came upon the scene and he said he grabbed the bigger dog, Duchess and put her in her pen. The defendant Steven Biasi's son, Joseph, fourteen years of age, testified on the night of the incident he took the dogs outside to put them in the pen when something ran out of the pen and the dogs got away and chased it. He stated he called his father because there was a fight. He then stated his father grabbed "Duchess" and he got "Rommel" and they put both dogs in the dog pen in their backyard.
The defendant Steven Biasi testified that his father the defendant, Nicholas Biasi Jr., did not own either dog. He testified his father is an asthmatic and must get medical shots if he goes near the dogs. He also testified his mother cannot go near the dogs because of their hair. Steven Biasi testified that he and his father each own one-half of the premises at 9-11 Clifford Terrace. He testified he is not sure if his mother or his wife have any ownership interest in said premises. He stated he and his family have lived at these premises for thirteen years and his parents have lived there thirty-six years.
The plaintiff testified that in the attack by the dogs she injured her neck, right shoulder, right arm, right hand, right buttock and she received a dog bite on the lower portion of her right leg. She testified that subsequent to the incident an CT Page 3562 injury to her left hand developed. She stated she felt that injury developed when she started overcompensating for her right shoulder problem by using her left hand more.
The plaintiff stated her primary doctor was Dr. David Riccio. She saw him for the injuries she sustained in this incident on January 5, 1995 and for four subsequent visits the last being April 10, 1995. He diagnosed the plaintiff's injuries as rotator cuff strain, muscle sprain to the back, tendinitis and a leg contusion. Dr. Riccio referred the plaintiff to Therapy Works for physical therapy. She was treated there by Robert J. Hewitt approximately thirty times between February 6, 1995 and May 15, 1995, (Exhibit D). She was treated there for a rotator cuff injury and left hand stiffness. (Exhibit E). The plaintiff stated she stopped physical therapy because she is an attorney and her trial schedule became very hectic and she just did not have the time for physical therapy. She stated she still does home exercises as previously prescribed by the physical therapist.
The medical bills incurred by the plaintiff as a result of this incident are Dr. David Riccio $281.00 (Exhibit C) and Therapy Works $2,330.00 (Exhibit D).
The plaintiff has brought suit under Connecticut General Statutes §§ 22-357 and 22-364. The pertinent parts of those statutes are set forth below:
 Sec. 22-357. Damage to person or property. If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. . . .
 Sec. 22-364. Dogs roaming at large. Intentional or reckless subsequent violation. (a) No owner or keeper of any dog shall allow such dog to roam at large upon the land of another and not under control of the owner or keeper or the agent of the owner or keeper, nor allow such dog to roam at large on any portion of any public highway and not attended or under control of such owner or keeper or his agent, provided nothing in this subsection shall be construed CT Page 3563 to limit or prohibit the use of hunting dogs during the open hunting or training season. The unauthorized presence of any dog on the land of any person other than the owner or keeper of such dog or on any portion of a public highway when such dog is not attended by or under the control of such owner or keeper, shall be prima facie evidence of a violation of the provisions of this subsection. Violation of any provision of this subsection shall be an infraction.
Pursuant to General Statutes § 22-357[a] keeper is defined as "any person, other than the owner, harboring or having in his possession any dog," General Statutes § 22-327(6).Murphy v. Buonato, 42 Conn. App. 239, 243 (1996). To harbor a dog is to afford lodging, shelter or refuge to it. (Citations omitted). Possession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog] (Citations omitted), id. One who treats a dog as living at his house and undertakes to control his actions is [a] keeper (Citation omitted) ibid. 243-244. In order to harbor or possess a dog, some degree of control must be exercised (Citations omitted) ibid. 244. After hearing the evidence in this matter the court finds that the defendants Steven Biasi and Desiree Biasi were the owners of the two dogs named "Duchess" and "Rommel" that attacked the plaintiff and as the owners are responsible for damages to the plaintiff as she has sustained her burden of proof on her complaint as to those defendants. The court further finds that the plaintiff has failed to sustain her burden of proving that Nicholas Biasi Jr. was an owner or keeper of either of the two dogs named "Duchess" and "Rommel" who attacked her and therefore he is not liable to her for any of her damages. There was no evidence whatsoever on which this court could find that Nicholas Biasi Jr. was an owner or keeper of the said two dogs other than the fact that they were penned on the property in which he was a part owner. There was no evidence that he exercised any dominion or control over the dogs, or that the dogs lived in his home (First Floor Residence).
The court awards the plaintiff as against the defendants Steven Biasi and Desiree Biasi damages of $7975.55 plus costs. Said judgment shall enter against the defendants Steven Biasi and Desiree Biasi only.
Judgment may enter accordingly.
William J. Sullivan, Judge CT Page 3564